IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., | § § § § | |
| Plaintiffs, | § § | Civil Action No. 4:18-cv-00519-ALM-KPJ |
| v. | § § | |
| BANK OF AMERICA CORP., | § § | JURY TRIAL DEMANDED |
| Defendant. | § § | |

**PLAINTIFFS WAPP TECH LIMITED PARTNERSHIP AND WAPP TECH CORP.'S OPPOSITION TO DEFENDANT BANK OF AMERICA CORP.'S MOTION TO STAY**

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................................ 1
II.  BACKGROUND ................................................................................................................. 1
III. ARGUMENT ....................................................................................................................... 5
   A.   Bank of America Is A True Defendant ..................................................................... 5
   B.   Bank of America's Motion is Premature ................................................................... 9
   C.   Judicial Economy Favors Denying Bank of America's Motion .............................. 10
   D.   Case Law Favors Denying Bank of America's Motion to Stay .............................. 12
IV.  CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**CASES**

*Cambrian Science Corp. v. Cox Commc'ns., Inc. et al.*,
   8:11-cv-01011-JST-AN, Docket No. 85, 2012 U.S. Dist. LEXIS 196144 (C.D. Cal. March 6, 2012) .................................................................................................................................. 13

*Cellular Commc'ns Equipment LLC v. Apple, Inc.*,
   No. 6:14-cv-251-KNM, 2016 WL 6884648 (E.D. Tex. Aug. 26, 2016) ................................. 12

*ePlus, Inc. v. Lawson Software, Inc.*,
   789 F.3d 1349 (Fed. Cir.) .......................................................................................................... 6

*Geotag, Inc. v. Georgia Armani S.P.A., et al.*,
   2:10-cv-569, Docket No. 78, 2011 U.S. Dist. LEXIS 159297, (E.D. Tex. Nov. 14, 2011) ..... 10

*In re Nintendo of Am., Inc.*,
   756 F.3d 1363 (Fed. Cir. 2014) .............................................................................................. 12

*Opticurrent, LLC v. Power Integrations, Inc.*,
   NO. 2:16-cv-325-JRG, 2016 WL 9275395 (E.D. Tex. Oct. 19, 2016) ...................................... 7

*RegenLab USA LLC v. eStar Techs. Ltd. et al.*,
   16-cv-08771, Docket No. 101, 2017 U.S. Dist. LEXIS 131495 (S.D. N.Y. Aug. 17, 2017)
   ....................................................................................................................................... 6, 13

*Saint Lawrence Commc'ns LLC v. Apple Inc.*,
   No. 2:16-cv-82-JRG, 2017 WL 3712912 (E.D. Tex. July 12, 2017) ...................................... 12

## I. INTRODUCTION

Defendant Bank of America Corp. ("Bank of America") filed a Motion to Stay ("Motion" or "Mot.")[1] this case pending resolution of Wapp Tech Limited Partnership's and Wapp Tech Corp.'s (collectively, "Wapp") claims against the "manufacturer." The Motion should be denied for numerous reasons. As Wapp shows below, Bank of America is also a "manufacturer" of the Accused Systems (as that term is defined in Wapp's complaint), and certain claims of the Patents are directly infringed by Bank of America. At the very least, Wapp should be allowed to serve its infringement contentions per the Local Patent Rules, and should be allowed discovery to determine the extent of Bank of America's activities in developing a test environment for their mobile applications ("apps").

## II. BACKGROUND

Wapp filed a complaint against Bank of America on July 20, 2018, alleging infringement of U.S. Patent Nos. 9,971,678 ("the '678 Patent"), 9,298,864 ("the '864 Patent"), and 8,924,192 ("the '192 Patent") (collectively, the "Patents"). In its Complaint, Wapp noted the extensive work done by the principal inventor of the Patents in developing various "Performance Engineering Innovations," which led to several awards for the patented work. Complaint ¶ 12, *Wapp Tech L.P. et al. v. Bank of America Corp.*, 4:18-cv-00519-ALM, Docket No. 1 (E.D. Tex. July 20, 2018). In addition to the research and development work behind the Performance Engineering Innovations, the principal inventor also licensed the Performance Engineering Innovations and the Patents to a Fortune 500 leader in enterprise software. Complaint ¶ 13.

Wapp's goal has been to democratize app development for a new generation of developers by migrating performance risks and reducing application development cycles from

---

[1] Mot. to Stay, *Wapp Tech L.P. et al. v. Bank of America Corp.*, 4:18-cv-00519-ALM, Docket No. 12 (E.D. Tex. Oct. 17, 2018).

months down to minutes by virtue of new performance engineering modeling. In an effort to protect the further marketing and development of the Performance Engineering Innovations, Wapp filed complaints against Micro Focus, Hewlett Packard Enterprise Co. ("HPE"), Bank of America, and Wells Fargo, alleging infringement of the Patents by various systems that test mobile device applications.[2] The Accused System includes systems that incorporate various products that once belonged to HPE but now belong to Micro Focus. Complaint ¶¶ 15–26. In addition to the HPE/Micro Focus products, other parties (e.g., Bank of America and Wells Fargo) adapt and specialize those products into their own unique testing environments,[3] as well as adding their own proprietary software to its testing environment,[4] and developing, testing, and distributing mobile applications (of which Bank of America claims to have 25 million users, Complaint ¶ 50). Wapp therefore alleged direct infringement against Bank of America and Wells Fargo (users of the HPE/Micro Focus products). Complaint ¶¶ 58, 76; *Wapp Tech L.P. et al. v. Wells Fargo & Co.*, 4:18-cv-00501-ALM, Docket No. 1 at ¶¶ 58, 76 (E.D. Tex. Oct. 16, 2018).

Soon after filing suit, Wapp conferred with Micro Focus based on a representation from Mr. Reiter that he represented HPE and Micro Focus. Shortly after those discussions ended, two new entities began an unnecessary litigation assault on the Patents. *Seattle SpinCo, Inc. et al. v. Wapp Tech L.P. et al.*, 1:18-cv-01585 (D. Del. Oct. 26, 2018). More specifically, Seattle SpinCo,

---

[2] *Wapp Tech L.P. et al. v. Bank of America Corp.*, 4:18-cv-00519-ALM, Docket No. 1 (E.D. Tex. Oct. 17, 2018); *Wapp Tech L.P. et al. v. Wells Fargo & Co.*, 4:18-cv-00501-ALM, Docket No. 1 (E.D. Tex. Oct. 16, 2018); *Wapp Tech L.P. et al. v. Micro Focus Int'l PLC*, 4:18-cv-00469-ALM, Docket No. 1 (E.D. Tex. Oct. 17, 2018); *Wapp Tech L.P. et al. v. Hewlett-Packard Enterprise Co.*, 4:18-cv-00468-ALM, Docket No. 1 (E.D. Tex. Oct. 17, 2018).
[3] For example, on information and belief each customer using the HPE/Micro Focus products creates a unique series of scripts that are required for the HPE/Micro Focus products to be used in a given testing environment.
[4] For example, on information and belief Bank of America incorporates a "UI TestRunner" software product that is "proprietary" to Bank of America into its app testing environment. (Ex. A.)

Inc. and EntIT Software LLC brought a declaratory judgment action against Wapp in the District of Delaware on October 15, 2018. *Id.* These entities allege that they should be the properly-named parties in any suit regarding the HPE/Micro Focus products. Rather than moving to intervene in the present case (if they are the properly-named parties) and then requesting to transfer the present case to Delaware (if they believe that is the correct and most convenient venue), Micro Focus brought a Motion to Dismiss, and HPE, Bank of America, and Wells Fargo each moved to stay their individual actions pending the outcome of the Seattle SpinCo/EntIT Software declaratory judgment action in Delaware. *Wapp Tech L.P. et al. v. Bank of America Corp.*, 4:18-cv-00519-ALM, Docket No. 12 (E.D. Tex. Oct. 17, 2018); *Wapp Tech L.P. et al. v. Wells Fargo & Co.*, 4:18-cv-00501-ALM, Docket No. 11 (E.D. Tex. Oct. 16, 2018); *Wapp Tech L.P. et al. v. Micro Focus Int'l PLC*, 4:18-cv-00469-ALM, Docket No. 12 (E.D. Tex. Oct. 17, 2018); *Wapp Tech L.P. et al. v. Hewlett-Packard Enterprise Co.*, 4:18-cv-00468-ALM, Docket No. 13 (E.D. Tex. Oct. 17, 2018).

Citing "judicial efficiency," these four entities burdened the Court with four separate motions rather than bringing a single motion to intervene and transfer. The Delaware plaintiffs did not bring such a motion (i.e., to substitute parties in this District and to request transfer to Delaware) because there is no reason to transfer this case to Delaware. The vast majority of the relevant documents and witnesses are located within the Eastern District of Texas, as Wapp alleged in its Complaint. Complaint ¶¶ 4–10. For example, Bank of America employs "Performance Test Engineers" in Plano, (Ex. C, *Performance Test Engineer*, Bank of America, http://careers.bankofamerica.com/job-detail/18049614/united-states/us/performance-test-engineer (last visited Oct. 31, 2018)); and Micro Focus has over 200 employees in the

3

Dallas/Fort Worth area and a 1.6 million-square-foot property in Plano related to its network virtualization and test products.[5]

Bank of America's Motion to Stay is particularly burdensome, as Bank of America's reliance on the customer suit exception fails on the merits. As detailed below, Bank of America directly infringes the Patents in its own right. While Bank of America purports to be willing to be bound by any adverse judgment against Micro Focus,[6] Bank of America's infringement includes actions for which Micro Focus cannot be held liable, including infringement of method claims for which **Bank of America is the direct infringer**.

Further, despite Bank of America's protestations, Bank of America is not a mere "reseller" of any HPE/Micro Focus product. In fact, Bank of America is not a reseller at all. As detailed below, Bank of America uses certain HPE/Micro products, along with other products, to create a development environment for its customer-facing apps (i.e., Bank of America's mobile banking apps, which its customers use for, among other things, depositing checks and conducting other banking activities). For example, evidence indicates that Bank of America incorporates certain proprietary software into its development environment. (Ex. A at 5, *Working as a Quality Assurance Manager at Bank of America: Employee Reviews*, Indeed.com, https://www.indeed.com/cmp/Bank-of-America/reviews?fjobtitle=Quality+Assurance+Manager &fcountry=ALL (last visited Oct. 31, 2018).) Wapp has not yet had a chance to determine through discovery how Bank of America uses such proprietary, non-public products in its infringement of Wapp's Patents.

---

[5] *See* Wapp's Opposition to Micro Focus's Motion to Dismiss for Lack of Personal Jurisdiction, Failure to Serve, and Improper Service of the Complaint, *Wapp Tech Limited Partnership et al. v. Micro Focus Int'l PLC*, 4:18-cv-00469-ALM (E.D. Tex. Oct. 17, 2018).

[6] Bank of America has not agreed to be bound by any injunctive relief that may be sought against Micro Focus.

Finally, as detailed below, because Bank of America is a direct infringer of certain claims of the Patents—either as a result of infringing a claimed method or by incorporating additional, non-HPE/Micro Focus products into its testing environment—Wapp's claims against Bank of America would remain even after a final resolution of the case with HPE and/or Micro Focus. For at least these reasons, Wapp should be allowed to proceed in the most judicially efficient way: by continuing the present action against Bank of America.

### III. ARGUMENT

#### A. Bank of America Is A True Defendant

Bank of America is a direct infringer of Wapp's Patents. For example, claim 60 of the '192 Patent recites:

> 60. A system comprising: **an application configured to enable a user to modify a photo on the mobile device**, wherein the application is developed using a software authoring platform configured to simultaneously visually emulate, via one or more profile display windows, a plurality of hardware characteristics indicative of performance of the mobile device when executing the application.

'192 Patent at 18:1–8 (emphasis added). On information and belief, Bank of America directly infringes this claim at least by providing an app to its users' devices (e.g., smartphones) that allow the user (via the device) to take a picture of a check for deposit. (Ex. B, *How to Use Mobile Check Deposit for Fast & Simple Deposits*, Bank of America, https://www.bankofamerica.com/online-banking/mobile-and-online-banking-features/mobile-check-deposit/ (last visited Oct. 31, 2018).) On information and belief, part of the picture-taking process includes optical character recognition and de-skewing of the image (i.e., enabling a user to modify a photo on the mobile device). *Id.* Bank of America, by providing its app to its users, is the direct infringer of this claim, not HPE or Micro Focus.

Many other claims of the Patents, particularly the method claims, recite elements performed by Bank of America. *E.g.*, '864 Patent at 24:17–31 ("A method for emulating an

5

application . . . the method comprising . . .playing the application in real time . . . monitoring the application playing in each of the models to determine resource utilization information . . . .") (Claim 20). Whether HPE and/or Micro Focus also indirectly infringe the method claims by inducing Bank of America to directly infringe is inapposite. Direct and indirect infringement are separate causes of action with different sets of infringers. *See* 35 U.S.C. § 271(a)–(b); *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1360 (Fed. Cir.) (recognizing the "active steps to encourage direct infringement and an 'affirmative intent that the product be used to infringe'" necessary for induced infringement). "Here, as in other method patent cases, each of the parties could be found liable for different reasons," and the fact of HPE/Micro Focus's liability does not dictate whether Bank of America will also be found liable. *RegenLab USA LLC v. eStar Techs. Ltd. et al.*, 16-cv-08771, Docket No. 101 at 12, 2017 U.S. Dist. LEXIS 131495 at *18 (S.D. N.Y. Aug. 17, 2017).

Additionally, Bank of America is a manufacturer of an Accused System. In a job review for a quality assurance manager, a current employee at Bank of America cites to a "UI TestRunner" software product that is "BoA proprietary." (Ex. A.) Although Wapp does not—and at this point, cannot—know the functionality of this product, it is reasonable to conclude, given the name of the Bank of America proprietary product, that "UI TestRunner" may, for example, be responsible for "emulating each of the mobile devices in real time using respective models," ('864 Patent, Claim 20), or provide a "software testing interface configured to simultaneously visually simulate . . . a plurality of operator network characteristics," ('678 Patent, Claim 1; '192 Patent, Claim 1). If Bank of America is using a proprietary software product to perform any aspect of the Patents' claims, then Bank of America is a "manufacturer," not merely a "customer" of either HPE or Micro Focus for the purposes of this suit.

Additionally, Bank of America is not "merely a 'distributor or reseller of the accused products.'" Mot. at 9 (*citing Opticurrent, LLC v. Power Integrations, Inc.*, NO. 2:16-cv-325-JRG, 2016 WL 9275395 at *5 (E.D. Tex. Oct. 19, 2016)). Bank of America does not distribute or resell the HP or Micro Focus "Software Suite" (as that term is defined in the Complaint at ¶ 23). Rather, Bank of America uses HPE/Micro Focus's products and adds its own proprietary technology to produce a combined system. In addition to "UI TestRunner," Bank of America employs multiple engineers whose job is to "[d]evelop, execute and maintain test scenarios and test scripts that exercise production-like scenarios to ensure that change is optimized for performance and free from performance defects in order to satisfy the customer experience." (Ex. C.) "Performance testing" at Bank of America includes multiple testing environments, developing "performance tests based on use cases," and providing "analysis of performance testing results and provid[ing] insights into where optimization opportunities and application inefficiencies exist." (Ex. C.) This is not an "off the shelf" interaction with a software product. *See* Mot. at 4 (*citing* Bank of America Ex. A ¶ 5) ("But to the extent any subsidiary of Bank of America does use any of the accused software, such subsidiary is merely a customer that uses the software 'off the shelf.'").

Further, the script development, "analysis of performance testing results," and providing "insights into where optimization opportunities and application efficiencies exist" provides additional evidence as to Bank of America's role as a direct infringer of the Patents. For example, claim 20 of the '864 Patent recites "monitoring the application playing in each of the models to determine resource utilization information by the application for each of the mobile devices." '864 Patent at 24:26–30. Bank of America's job posting provides evidence that Bank of America develops technology related to the Accused System.

Most enterprise-level, commercially-sold software is designed to be used and not modified by users. For Bank of America to suggest that not modifying "the code in the software," Bank of America Ex. A ¶ 5, is a valid theory of noninfringement is a red herring on the issue of liability. The key point here is that Bank of America's liability arises from its own activities of developing (i.e., making, using, testing, and distributing) its mobile banking app in a manner that violates Plaintiff's Patents. Micro Focus is not a developer of mobile apps; Micro Focus provides Bank of America a tool used by Bank of America to develop the Bank of America mobile applications. HPE/Micro Focus (selling the Software Suite and other products) and Bank of America (developing, testing, and distributing Bank of America's mobile apps) are accused of different activities and have their own distinct liabilities.[7]

It is fair to assume that Bank of America is aware of its own significant technology development of critical features related to its app-testing environments (i.e. load testing, virtual user testing and virtual user scripting). Also, Bank of America certainly understands that liability regarding these features would rest prominently on themselves since they would be the primary architects and executers of these features. Nevertheless, Bank of America puts forth the irrelevant argument that the banks do not alter the Software Suite source code itself and play no role in the design of the Software Suite source code. In its Motion, Bank of America focused only on network virtualization and failed to acknowledge its own activities in development, coding, use, and

---

[7] Wapp's claim charts that may cover both Micro Focus's selling activity and Bank of America's development activity is more a testament to good claim drafting than being dispositive under the stay theory proffered by Bank of America. Wapp should not be penalized because Bank of America's engineering activity and Micro Focus's selling activity may both be implicated by some of Plaintiff's patent claims. Indeed, this does not change the fact that liability for Bank of America and Micro Focus may turn on very different infringing behaviors by the parties involving different products and features. Accordingly, while there is a relationship between the Software Suite and the Bank of America mobile app, it is disingenuous to somehow equate the Software Suite with Bank of America's mobile app.

distribution of infringing products. Bank of America's consent to be bound by a judgment against HPE and/or Micro Focus is not relevant to Bank of America's standing as a direct infringer of Wapp's Patents. Consequently, Bank of America is a "true defendant" in every sense.

As detailed in the next section, Bank of America's Motion is premature in addition to failing on the merits. Specifically, Wapp has not yet had a chance to provide its infringement contentions under the Local Patent Rules. Granting Bank of America's stay would deprive Wapp of the opportunity to fully describe the extent to which Bank of America's actions infringe Wapp's Patents. In addition, Bank of America uses its own products as well as third party products to develop and test its mobile apps. Thus, Wapp should be allowed fact discovery on these key issues. Only through discovery will Wapp be able to determine the full extent of Bank of America's infringement.

### B. Bank of America's Motion is Premature

Bank of America presents its Motion to Stay despite not knowing the full extent of Wapp's infringement allegations since Wapp has not yet served its infringement contentions under the Local Patent Rules. As detailed above, Bank of America's actions alone make it an infringer of Wapp's Patents, regardless of any action by HPE and/or Micro Focus. Wapp's infringement contentions will further elucidate Wapp's preliminary infringement theories regarding Bank of America's infringing acts. Additionally, as noted above, Bank of America incorporates its own proprietary software into its app testing environment. Wapp should be allowed discovery to determine the extent to which this (and potentially other) non-public products Bank of America uses in its app testing environment. Finally, no case management conference has yet been held in this case or the related cases with Wells Fargo, HPE, or Micro Focus. Bank of America's Motion to Stay should be denied at least until these three major issues (initial infringement contentions, fact discovery, and case management) are completed.

This Court has previously denied as premature Motions to Stay where, as here, there is disagreement about the scope of infringement allegations. "The Local Patent Rules provide for infringement contentions as a mechanism to avoid or resolve this type of dispute. Because [these] cases are at an early stage, [Plaintiff] has not yet been required to serve infringement contentions." *Geotag, Inc. v. Georgia Armani S.P.A., et al.*, 2:10-cv-569, Docket No. 78 at 5–6, 2011 U.S. Dist. LEXIS 159297, *233-236 (E.D. Tex. Nov. 14, 2011). In *Geotag,* the Court further ordered the parties "to further meet and confer regarding case management issues and to file a case management proposal (or competing proposals). The Court can better address a motion to stay after the parties file a case management proposal." *Id.* at 6. Because this case is at a similar procedural point (prior to infringement contentions, prior to discovery, and prior to a case management conference), Wapp asks the Court to deny Bank of America's Motion to Stay as premature.

### C.  Judicial Economy Favors Denying Bank of America's Motion

Should Bank of America's Motion be granted, Wapp's ability to seek damages from Bank of America for Bank of America's own infringing acts will be delayed by years. First, granting Bank of America's Motion would require Wapp to proceed against a set of parties—Seattle SpinCo and EntIT Software—whose relevance to the current action is in dispute. If, after jurisdictional discovery in Wapp's case against Micro Focus, the Court determines Seattle SpinCo and EntIT Software are the appropriate parties responsible for the HPE/Micro Focus products and that the case belongs in the District of Delaware, Wapp would be forced to take the case against Seattle SpinCo and EntIT to resolution prior to seeking relief from Bank of America for its own infringing acts. On average, patent cases in Delaware take 251 days to dismiss in contested cases, 887 days to resolve summary judgment motions, and 782 days to trial.

This is in addition to the fact that the bulk of the relevant witnesses and documents in any alleged controversy surrounding the Software Suite reside in this District and not in Delaware. Bank of America hires Performance Test Engineers for LoadRunner in this District and maintains a place of business in this District.[8] Thus, even after Wapp resolves any alleged controversy in Delaware, Wapp's ability to recover from Bank of America could be delayed by 1–2 years. Further, such a resolution would ***still require this Court*** to take up this case to resolve issues related to Bank of America's own actions.

Further, contrary to Bank of America's assertions, Wapp would suffer great prejudice should the Court stay this action. Bank of America (and other large banks, including Wells Fargo) are some of the largest infringers of Wapp's Patents. As detailed above, Wapp's Patents include various method claims that Bank of America infringes. As Wapp alleged in paragraphs 50–53 of its complaint, banks, "by the sheer volume and number of active daily users, would appear to have a significant need for virtual user and network virtualization testing now and in the future." The mobile app is not a peripheral component as Defendant suggests but instead a crucial resultant element whose performance is monitored by Bank of America engineers in the pre- and post-production design stages. Bank of America has 25 million users who rely on the Bank of America mobile app to function properly and to efficiently conduct financial transactions. Complaint ¶ 50.

Wapp's damages theory for Bank of America's infringement is premised on the underpinning economics relating to mobile device user activity and transactions. Complaint ¶¶ 40–50. Liability for Bank of America is different from the liability of HPE/Micro Focus—using a

---

[8] Additionally, for various reasons, venue is proper for Wapp's cases against Bank of America, Wells Fargo, HPE, and Micro Focus in the Eastern District of Texas, not the District of Delaware. *See* Wapp's Opposition to Micro Focus's Motion to Dismiss for Lack of Personal Jurisdiction, Failure to Serve, and Improper Service of the Complaint, *Wapp Tech Limited Partnership et al. v. Micro Focus Int'l PLC*, 4:18-cv-00469-ALM (E.D. Tex. Oct. 17, 2018).

Software Suite to test a mobile app has a different damages model than development and distribution of the mobile app. In short, the mobile app, which is clearly provided by Bank of America, is a critical element in Wapp's damages case that would be compromised severely if a stay were granted. Therefore, resolution of infringement issues in the Micro Focus suit will not resolve all infringement issues relating to the Bank of America mobile banking app.

### D. Case Law Favors Denying Bank of America's Motion to Stay

Bank of America relies primarily on three cases to support granting the Motion: (1) *In re Nintendo of Am., Inc.*, 756 F.3d 1363 (Fed. Cir. 2014), (2) *Saint Lawrence Commc'ns LLC v. Apple Inc.*, No. 2:16-cv-82-JRG, 2017 WL 3712912 (E.D. Tex. July 12, 2017), and (3) *Cellular Commc'ns Equipment LLC v. Apple, Inc.*, No. 6:14-cv-251-KNM, 2016 WL 6884648 (E.D. Tex. Aug. 26, 2016). Each of these cases is readily distinguishable from the instant facts.

First, in *Nintendo*, the customers for whom the case was stayed were merely **resellers** and/or **distributors** of Nintendo's products. In this case, **Bank of America is not a reseller or distributor** of any part of the Accused System (including the Software Suite). Further, part of the Court's analysis in *Nintendo* was directed toward the fact that all of the relevant documents and witnesses relevant to the infringement action were located in the Western District of Washington rather than the Eastern District of Texas. *Nintendo*, 756 F.3d at 1365–66. In this case, not only do the bulk of documents and witnesses related to the HPE/Micro Focus products reside in the Eastern District of Texas, Bank of America itself has an innovation and development center in the Eastern District of Texas. (Ex. C.) Wapp also notes that, unlike the plaintiff in *Nintendo*, Wapp has not yet filed its infringement contentions.

In both *Saint Lawrence* and *Cellular Communications*, the plaintiffs (having already served their infringement contentions) identified a single infringement theory for both manufacturers and customers. In *Saint Lawrence*, the Court noted the customers played "no role in the development,

12

design, or implementation of" the accused product. *Saint Lawrence* at *6. In *Cellular Communications*, the Court concluded that any differences between the customers and manufacturers did not result from any customer modification. *Cellular Commc'ns.* at *12–20. In the instant case, Bank of America integrates several products into a testing environment. Bank of America then provides ***additional technology***, such as testing models and test scripts that are ***unique to Bank of America's needs***. Bank of America's test scripts are pieces of software code developed by Bank of America for its own unique testing environment. Use of this additional technology is related to the claim language. *E.g.*, '864 Patent at 24:20–31. In addition to the models and scripts, Bank of America also appears to add its own proprietary software to its testing environment. Further, Bank of America develops and distributes its own mobile apps. All of these factors bring Bank of America under the ambit of "manufacturer" rather than "customer."

Finally, as detailed above, Bank of America and HPE/Micro Focus infringe Wapp's Patents for different reasons. Courts have found that the customer suit exception does not apply when customers infringe for entirely different reasons than the manufacturers. *Regenlab USA LLC v. eStar Techs. Ltd. et al.*, 16-cv-08771, Docket No. 101 at 12, 2017 U.S. Dist. LEXIS 131495 (S.D. N.Y. Aug. 17, 2017). Additionally, although Bank of America purports to be willing to be bound by any adverse judgment against Micro Focus (although one wonders whether Bank of America is aware of the extent of its liability to Wapp under all claims of the Patents), Bank of America has not agreed to be bound by any injunctive relief granted by the Court. *See Cambrian Science Corp. v. Cox Commc'ns., Inc. et al.*, 8:11-cv-01011-JST-AN, Docket No. 85, 2012 U.S. Dist. LEXIS 196144 at *4–5 (C.D. Cal. March 6, 2012) (noting that customer defendants, although agreeing to be bound by the district court's rulings on issues of infringement, validity and enforceability, did not agree to be bound to any injunction or damage ruling).

## IV. CONCLUSION

Bank of America's Motion to Stay should be denied at least because Bank of America is also a "manufacturer" of the Accused Systems, and Bank of America directly infringes certain claims of the Patents. At the very least, Wapp should be allowed to serve its infringement contentions per the Local Patent Rules, and should be allowed discovery to determine the extent of Bank of America's activities in developing a test environment for their mobile apps.

Respectfully submitted,

Dated: October 31, 2018           By: */Jeffrey G. Toler/*
                                      Jeffrey G. Toler
                                      Texas State Bar No. 24011201
                                      Aakash S. Parekh
                                      Texas State Bar No. 24059133
                                      Benjamin R. Johnson
                                      Texas State Bar No. 24065495
                                      TOLER LAW GROUP, PC
                                      8500 Bluffstone Cove
                                      Suite A201
                                      Austin, TX 78759
                                      (512) 327-5515
                                      E-mail: jtoler@tlgiplaw.com
                                      E-mail: aparekh@tlgiplaw.com
                                      E-mail: bjohnson@tlgiplaw.com

                                      *ATTORNEYS FOR PLAINTIFFS*
                                      *WAPP TECH LIMITED PARTNERSHIP AND*
                                      *WAPP TECH CORP.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 31, 2018 the foregoing was filed via the Court's CM/ECF filing system, to be served electronically on all counsel of record in this matter.

*/Angie Blazek/*
Angie Blazek