1

| | | |
|---|---|---|
1 | | UNITED STATES DISTRICT COURT
 | | EASTERN DISTRICT OF TEXAS
2 | | SHERMAN DIVISION

```
 3   WAPP TECHNOLOGY LTD         :        DOCKET NO. 4:18CV469
                                :
 4   VS.                        :        SHERMAN, TEXAS
                                :        OCTOBER 28, 2019
 5   MICRO FOCUS INTERNATIONAL  :        9:00 A.M.

 6   WAPP TECHNOLOGY LTC        :
                                :
 7   VS.                        :        DOCKET NO. 4:18CV501
                                :
 8   WELLS FARGO                :

 9   WAPP TECHNOLOGY LTD        :
                                :
10   VS.                        :        DOCKET NO. 4:18CV519
                                :
11   BANK OF AMERICA            :
                         SCHEDULING CONFERENCE
12            BEFORE THE HONORABLE AMOS L. MAZZANT,
                   UNITED STATES DISTRICT JUDGE
13
     APPEARANCES:
14
     FOR THE PLAINTIFF:         MR. TIMOTHY DEVLIN
15                              MR. HENRIK PARKER
                                THE DEVLIN LAW FIRM
16                              1526 GILPIN AVENUE
                                WILMINGTON, DE  19806
17

18   FOR THE DEFENDANT:         MR. MARK REITER
                                MS. ASHBEY MORGAN
19                              GIBSON DUNN & CRUTCHER
                                2100 MCKINNEY, SUITE 1100
20                              DALLAS, TX  75201

21
     COURT REPORTER:            MS. JAN MASON
22                              OFFICIAL REPORTER
                                101 E. PECAN #110
23                              SHERMAN, TEXAS  75090

24   PROCEEDINGS REPORTED BY MECHANICAL STENOGRAPHY, TRANSCRIPT

25   PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
```

2

1          THE COURT:  Please be seated.

2       Good morning.  Sorry.  We just finished a two week jury

3    trial and the jury is out deliberating, so all the parties

4    still have some of their materials here.

5          We're here in case 4:18CV469, 4:18CV501 and 4:18CV519,

6    Wapp Tech Limited Partnership versus various Defendants.

7    And for the Plaintiff?

8          MR. PARKER:  Your Honor, I'm Henrik Parker from the

9    Devlin Law Firm and this is my cohort and colleague, Tim

10   Devlin.

11         MR. DEVLIN:  Good morning, Your Honor.

12         THE COURT:  Good morning.  And for defense?

13         MR. REITER:  Good morning, Your Honor.  Mark Reiter

14   for the Defendants.  With me is my colleague Ashbey Morgan.

15         THE COURT:  Very good.  We're here because you had

16   some disputes on some certain things, which I think were pretty

17   universal throughout the three cases, so we can just go through

18   the disputes you have and get them resolved and get the case

19   moving along.

20       I guess the first dispute relates to just two of the

21   cases, the issue of the motion to transfer deadline.  So

22   I'll hear from y'all on each of these issues.  And you can

23   remain seated.  Just have your mic on.

24         MR. PARKER:  Okay.  Your Honor, from the Plaintiff's

25   side, we were happy with the proposal you had, so I guess

1    perhaps Mr. Reiter should be starting on this topic.

2              THE COURT:  That's fine.

3              MR. REITER:  Thank you, Your Honor.  So a few things.

4    This case has been pending for -- or these cases have been

5    pending for nearly a year and a half, and with respect to the

6    bank cases, the Wells Fargo and Bank of America cases, we still

7    have no idea what's accused.  What's accused in the complaint

8    are the Micro Focus group products.  That's all that's accused.

9         Your Honor denied our motion, at least for the time

10   being, without prejudice on the motion to stay based on the

11   customer suit exception, based on assertions that the

12   Plaintiff has made that the banks are manufacturers in and

13   of themselves, that they sell their own products outside of

14   the Micro Focus sphere.  We don't know what those products

15   are.  We believe that they are just customers and the case

16   should be stayed.

17        But we served discovery with -- shortly after the 26(f)

18   conference.  We received an answer on that.  With respect to

19   Bank of America, we received nothing.  With respect to Wells

20   Fargo, interestingly, they provided a want ad and that want

21   ad is for a position in North Carolina.

22        And the point here is, Your Honor, that we just don't

23   know what is accused, and until we know what is accused, we

24   don't know if a motion to transfer is viable or not.  We're

25   not going to waste Your Honor's time with one if there's no

4

1    basis.

2        And so until we get the infringement contentions and we

3    see exactly what they're accusing and how they're accusing

4    it, we don't know if we have a basis to move to transfer the

5    bank cases.

6                THE COURT:  Any response?

7                MR. PARKER:  Your Honor, I do think we have accused

8    particular products.  There may be additional products that

9    come out during discovery.  But the notion of waiting until

10   we've fully fleshed out the discovery of all potentially

11   infringing products before a decision on where a case should

12   be, I think it strikes us as somewhat of a delaying process.

13   And we've been at this case for quite awhile now without really

14   getting to any of the substance, so we would prefer to just be

15   moving forward.

16                MR. REITER:  But, Your Honor, they haven't accused.

17   The only thing that's specifically accused are the Micro Focus

18   products, and based on that, we won't move to transfer.  But if

19   there are other products that they contend are independent of

20   those products, we should at least have an opportunity to look

21   at that and decide if a 1404 or 1406 motion is appropriate.

22                THE COURT:  And I know, of course, it's taken awhile

23   for us to get to this point, and I know based on the Court's

24   proposed deadlines, the deadline would have already passed.

25   However, I don't have a problem -- I think you asked for

5

1    November 27th.  That's within a month, so I'll grant that

2    request in the two cases.

3              MR. REITER:  Thank you, Your Honor.

4              THE COURT:  And then the next issue was regarding the

5    separation of basically -- well, I guess you want a deadline to

6    serve discovery directed towards the customer suit doctrine.

7              MR. REITER:  Yes, Your Honor.  And briefly, it's the

8    same issue.  The motion to stay the bank cases was denied.

9    Your Honor said that discovery was needed to determine whether

10   or not the banks are themselves manufacturers, separate and

11   apart from the Micro Focus group.

12        We believe that if there are questions, if there is

13   discovery they need, they should go ahead and ask that right

14   away.  They are in control.  They know what they are going

15   to accuse, and there's no reason to delay on that.  There's

16   no reason to put the banks through the burden of discovery

17   and claim construction if we can resolve this issue quickly.

18   And I haven't heard any reason why we shouldn't be able to

19   resolve the issue quickly.

20             MR. PARKER:  Your Honor, the notion of setting a

21   deadline when all discovery for a somewhat amorphous concept of

22   customer suit exception seems inappropriate to us.  There will

23   be discovery about infringement of all kinds going through the

24   normal discovery process, and I don't feel that we -- the

25   Plaintiffs don't feel that they should be limited to the

6

1    first -- I forget exactly what the deadline is, but the first

2    few weeks of discovery to fully flesh out all potential

3    infringement issues.

4          THE COURT:  I agree.  I mean, discovery is basically

5    open, so I don't see that another deadline is necessary.  I

6    don't know that it's inappropriate, but I just don't think it's

7    necessary to set, you know, so --

8          MR. REITER:  Just real quickly, Your Honor, on

9    that -- and I understand what you're saying, but at the same

10   time, this case has been pending for quite some time.  And if

11   there are questions that the Plaintiffs have about whether or

12   not the banks are alleged infringers, separate from the Micro

13   Focus group, it seems like they're in a position to be able to

14   ask that discovery now and let us move that issue along and not

15   burden those parties or the Court with the extra cases that are

16   here.

17         THE COURT:  Well, I'm not going to add a deadline in

18   for that to force the Plaintiffs to do that, but I suspect that

19   the Defendants will pursue other avenues that you deem

20   appropriate that the Court will have to address in the future

21   on the issue.

22       The next dispute was regarding the deadline for the

23   parties or for the Defendants on the invalidity contentions.

24   I guess the only difference was -- I think the Court's

25   proposed deadline was December 2nd and the Defendants want

1    December 20th.

2           MR. REITER:  Yes, Your Honor.

3           THE COURT:  And let me ask, Mr. Parker, what's the

4    problem there?

5           MR. PARKER:  We -- the Plaintiffs were just happy to

6    accept the date that the Court had proposed and --

7           THE COURT:  Right, I understand that, but I'm saying

8    I don't necessarily see a problem with December 20th.

9           MR. PARKER:  Your Honor, I'm -- I'm not going to

10   argue too hard on that one I don't think.

11          THE COURT:  That's fine.  I'll give you the 20th.

12          MR. REITER:  Thank you, Your Honor.

13          THE COURT:  Let's see, the next dispute is the

14   deadline for the parties to exchange preliminary proposed claim

15   terms.

16          MR. REITER:  Well, that kind of -- given that you

17   have given us the extra time on the contentions, what we've

18   done is push that date I think to January 6th to account for

19   the holidays, so that the parties aren't trying to exchange

20   terms over Christmas and New Year's.  And then there was a

21   later date for the exchange of constructions and so forth.

22   None of this affects the briefing schedule that Your Honor put

23   in place, but --

24          THE COURT:  So I assume there's no problem with that.

25          MR. PARKER:  Your Honor, there's -- the date -- there

8

1   is no problem with the initial date.  I'm just thinking maybe

2   we -- I'm sure we can work it out, and given your just moments

3   ago ruling, I'm sure we can work out the schedule.  I don't

4   think we had any real dispute about phasing the various things.

5          THE COURT:  What about just doing the January 6th

6   date, will that work?

7          MR. PARKER:  Yes, Your Honor.

8          MR. REITER:  Then I believe we have an agreement on

9   the 4-2 exchange, Your Honor, the deadline to exchange

10  constructions and extrinsic evidence.

11         THE COURT:  Yes.  That's not a problem.

12         MR. REITER:  And then I guess where we part ways

13  again is on the 4-3 deadline.  Under the agreed date for the

14  4-2, going from the 22nd of January to the 31st doesn't give

15  very much time to work out all of the proposed constructions

16  and provide the evidence and so forth and take expert

17  depositions, if those are needed, so we provided some more time

18  for that.

19         MR. PARKER:  We're talking about the February 19th

20  date?

21         MR. REITER:  Yes.

22         MR. PARKER:  We're okay with that, Your Honor.

23         THE COURT:  Okay.  So the next dispute is the issue

24  of mediation.  I will tell you, the Court's preference on

25  mediation would be preferably 30 days after the Markman

9

1   decision.  I mean, you're welcome to do an early mediation, but

2   what I have found in patent cases is they don't seem to really

3   work and that most cases settle after -- well, they will settle

4   either before Markman but they will settle long before

5   anything, without the need of a mediation.  But if the case is

6   still going, then after the Markman decision, which usually

7   I've never -- I've never gone beyond 30 days after the Markman

8   hearing to issue a decision, but usually it's within a few

9   weeks, because I'll have a technical advisor I'll appoint.

10      So what about that?  I mean, I won't set the exact date

11   because I would say 30 days after mediation -- I mean after

12   the Markman decision.

13          MR. PARKER:  Your Honor, I mean, that's fine.  It

14   obviously takes two parties or two sides to have a mediation of

15   any value.  We had just suggested having it after the briefing

16   on the Markman and -- but if that's your experience, Your

17   Honor, we're happy to comply.

18          THE COURT:  I mean, I don't mind doing that.  I don't

19   want to go to after the dispositive motions because those won't

20   be decided, you know, typically until -- we'll be racing to get

21   them done before the Pretrial Order is due.

22          MR. REITER:  No, that's fine.  We agree with Your

23   Honor that having the claim construction decision in hand is of

24   benefit.  We pushed it a little bit out, but I -- basically to

25   get the claim construction decision.

10

1          THE COURT:  And I don't mind if there's -- I mean, if

2    both sides are willing to go earlier, you certainly can do

3    that.  I'm just not going to force it.  That's usually what I

4    do is if you can't agree, I do it 30 days after the claim

5    construction order is entered.

6        And that's a loose date too because you'll know that

7    I will issue it then, but trying to get everyone together,

8    attorneys' schedules and things like that, so if both sides

9    need to push it out just to get the mediator and all that.

10       And have y'all talked about a mediator?

11          MR. PARKER:  We have not.

12          MR. REITER:  No, Your Honor.

13          THE COURT:  Do y'all have any suggestions for a

14   mediator?

15          MR. REITER:  I'm always happy to use Judge Folsom.

16   I've always found him to be a good mediator.  I haven't talked

17   to my client about it.

18          THE COURT:  I've appointed Judge Folsom in many of my

19   cases.

20          MR. PARKER:  I'm going to defer to Mr. Devlin on the

21   notion of mediators.  I think he has more knowledge than me.

22          MR. DEVLIN:  Your Honor, Judge Folsom would be fine.

23   There's plenty of -- thank you.  My microphone is now on.

24   Judge Folsom would be fine with us.  If his schedule doesn't

25   work out, we've got plenty of other folks we've worked with.

11

1          THE COURT:  That's fine, and I will appoint Judge

2    Folsom for it.

3          So I think the next dispute is the deadline for

4    mandatory disclosure, and I guess maybe we should have a

5    bigger discussion too because I know y'all have a dispute

6    regarding kind of separating discovery.  I will just tell

7    you, I don't do that.  I used to.  I used to have that, but

8    discovery is just open and that includes really all that

9    discovery.  Because you wanted to have a close of fact

10   discovery versus I think expert discovery.

11         MR. REITER:  Yes, Your Honor.  In my experience in

12   patent cases, which is basically what I've done for the last 30

13   years, it just makes things much easier to understand what the

14   set of facts are that the experts are relying upon and not have

15   late fact depositions or disclosures occur, such that the

16   experts have to go back and supplement their reports.

17         We're talking about three patents here that cover a

18   variety of different technologies, up to 169 claims.  I'm

19   sure they're not going to be asserting all of those at the

20   time we get to expert discovery, at least I hope not, and

21   just for efficiency purposes, it makes sense to have a fact

22   discovery cutoff and then an expert discovery cutoff and

23   everybody knows what they're working from.

24         MR. PARKER:  Your Honor, I mean, I -- that does

25   happen frequently in cases, but I think there's no particular

12

1    reason to set up a specific schedule beyond what Your Honor was

2    suggesting.  And I'm sure that the parties will be working to

3    try to handle things efficiently and appropriately.  But if

4    something crops up and we need to do some follow on discovery,

5    factual discovery or something, then we feel we should have

6    that right.

7              MR. REITER:  Nobody is saying that you don't have the

8    right to complete fact discovery.  It just makes sense to put

9    it in a specific order in these types of technical cases.

10             THE COURT:  Well, I'm not going to deviate from the

11   Court's normal schedule.  You're always welcome to continue to

12   discuss it.

13        And something I always say is I don't have any standing

14   orders in my court and it's because I put a high premium on

15   cooperation of the attorneys.  So I'm willing to do things

16   in a different way and I'm open to anything if you want to

17   agree to something different.

18        The only thing that I -- just agreeing to move a trial

19   date won't get you over that.  You have to show true good

20   cause for me to move the trial date.  But everything else,

21   and even with discovery, I've had many trials, not so much

22   patent cases but in some of my trade secret cases they were

23   doing discovery as the trial was happening in terms of

24   depositions.  Let's hope that doesn't happen.

25        Okay.  So going back to the deadline, y'all wanted to

13

1   move up the deadline, or Defendants did, on mandatory

2   disclosure.

3            MR. REITER:  I'll say, Your Honor, if Your Honor is

4   going to keep the single deadline for --

5            THE COURT:  Then you don't care about that?

6            MR. REITER:  Then I don't care.  We were trying to

7   modify that so that it fit within the separate fact and expert

8   cutoffs.

9            THE COURT:  That's fine.  Then I guess on my other

10  dates, you're fine leaving them the way they are then?

11           MR. REITER:  The only --

12           THE COURT:  Well, of course, I'll cross out the close

13  of fact discovery.  But you had the deadline for the party to

14  designate expert witnesses, you're moving that up.  I assume

15  you want to go back to the January 22nd.

16           MR. REITER:  Yeah, we want to go back to the same.

17  Yes, Your Honor.  Thank you.

18           THE COURT:  And we don't need an expert discovery

19  deadline.

20       And what will happen is right now this is set for final

21  pretrial conference, and what I typically do in all my cases

22  is they're set and then we'll -- at the pretrial conference

23  we'll set the trial, in this case trials.

24       But what I would say is if we get to that point where

25  it looks like it will go to trial, try to reach out to my

14

1   office to try to get a special setting.  I usually specially

2   set my patent cases, but we do it -- I don't block those off

3   as far in advance.  And it also depends on how busy the

4   Court's docket is.

5        This trial I just completed is my 14th jury trial of

6   the year and two of them have lasted a month each, and this

7   one was a two week trial.  So it has been a busy, busy year

8   for the Court, my busiest really for jury trials.  So some

9   of that impacts.  In September I had nine trials that

10  actually wanted to go to trial, and Judge Jordan, our new

11  District Judge in Plano, took three of those for me.  And

12  then the last one I'm trying in December for two weeks,

13  although I have a patent case backed up to it.  The other

14  case is older, but they're both civil cases.

15       So what I would say is, I'm just giving you advance

16  notice to reach out to Terri Scott in my office.  Alex Chern

17  is my lawyer in the case too.  You can reach out to him as

18  well, if I didn't introduce y'all to him.  So if you think

19  you're going to trial, reach out to try to get a special

20  setting.

21            MR. REITER:  I can't think of a better way to end the

22  year than with a patent case, Your Honor.

23            THE COURT:  I'm sorry?

24            MR. REITER:  I said I can't think of a better way to

25  end the year than with a patent case.

1          THE COURT:  Well, it's a backup to another civil case

2  that's older.  Both will take -- I think the patent case will

3  take eight days.  They want nine to ten days for the other.

4  Then I have a criminal case too that we're going to have to

5  move for the third week of December, that I've already tried

6  once and we're trying it a second time.  So it's -- yeah.

7      Anyways, I think that deals with all the deadlines,

8  correct?

9          MR. REITER:  Yes, Your Honor.

10          MR. PARKER:  Yes, Your Honor.

11          THE COURT:  Okay.  So unless I have skipped over

12  something, the next issue I think in dispute is really the

13  issue of the privilege logs regarding litigation counsel.

14          MR. REITER:  Yes, Your Honor.

15          THE COURT:  So let's hear about that.

16          MR. REITER:  Well, we believe that -- well, we have

17  an agreement that nothing needs to be logged after the filing

18  of the first complaint, which I believe was July 2nd of 2018.

19  The parties are in dispute over whether or not the Plaintiff

20  should log or anybody should log communications with trial

21  counsel, litigation counsel, pre-suit.

22      We believe that they should.  Wapp is a non-practicing

23  entity.  There are issues in dispute about what its strategy

24  was, why it filed the case, when it filed the case, what it

25  knew.  Those are all pending before Your Honor in our motion

16

1    to transfer in the Micro Focus group case.  So we believe

2    that a privilege log is appropriate.

3         There is actually a declaration from Mr. Lowe, I

4    believe the president of Wapp, who says that no such

5    communications occurred about trying to pit Micro Focus PLCV

6    versus HPE.  We believe they've waived privilege on that.

7    That's a separate issue.  But the fact is we believe that to

8    the extent there have been communications, those

9    communications should be logged so we can test that.

10              MR. PARKER:  Your Honor, I'll start with -- as we had

11   in our papers, if they want to pay us for the cost of doing

12   such a log, then we're happy to do it.  But it does seem like

13   it's -- it's not necessarily a fishing expedition, but the

14   notion of communications with litigation counsel, if we're

15   having an appropriate definition of litigation counsel, just

16   seems like it doesn't have any value.  And many of the topics

17   that Mr. Reiter was referring to aren't going to come out in a

18   privilege log.

19        So they're entitled to discover non-privileged things

20   that occurred prior to suit, but it just seems like a waste

21   of effort and time to be worrying about litigation counsel

22   communications.

23              THE COURT:  Okay.  Go ahead.

24              MR. REITER:  Well, given that the Plaintiff is a

25   non-practicing entity and given that they are in the business

1    of enforcing the few patents that they have, we believe that

2    there is a likelihood that these discussions really are of a

3    business nature, even though they may involve litigation

4    counsel, and we should be permitted to test that and see what

5    they are.

6        And we shouldn't have to pay for that -- that ability,

7    given that the rules require it.  They are a plaintiff.

8    They came into this court, filed this case, and there are

9    certain consequences associated with that.

10        MR. PARKER:  Your Honor, I mean, they're entitled to

11    normal discovery.  To the extent there are business

12    communications, then they're entitled to appropriate discovery

13    into that.  But that seems separate and apart from

14    communications with litigation counsel of a privileged nature.

15    And the notion that it's somehow connected to the business side

16    of things and that we would be overly aggressive in our

17    privilege logging or withholding of documents, I -- I take

18    slight offense to, I guess.

19        THE COURT:  I understand.

20        MR. REITER:  Well, normal discovery includes

21    privilege logs and we're entitled to that, as he just said.

22        THE COURT:  Right.  Well, just because you have to do

23    a privilege log doesn't mean they get the documents.

24        MR. PARKER:  Sure.

25        THE COURT:  So it means that one day I might have to

18

1    do an in-camera review.

2        But here's what I'll do is let me -- I don't know that

3    I've had a fight about this.  I'm trying to remember there

4    being an issue regarding this.  Let me look at that.  I'm

5    not going to make a decision today.  I'll put something out

6    in the Scheduling Order, but I just want to contemplate it.

7        Have y'all dealt with this in other patent cases?

8        MR. REITER:  Typically my experience is that

9    communications pre-suit are logged.

10       MR. PARKER:  I -- it's not uncommon, granted.  But,

11   again, there's a lot of waste in patent litigation and we're

12   just trying to cut through some of it that just seems like --

13       THE COURT:  Well, I mean, without divulging, I mean,

14   how onerous would it be?  How much litigation counsel

15   communication pre-suit would there have been that would be --

16       MR. DEVLIN:  Your Honor, Tim Devlin on behalf of

17   Plaintiff.

18       If we may, we can investigate that.  The concern that

19   we have is that, given these days of email communication,

20   that the volumes increase exponentially relative to what we

21   had dealt with in the distant past obviously.

22       And I think we can confirm perhaps two things.  Not

23   now, but I want to confirm and then work with opposing

24   counsel and perhaps the Court again.  A, we might be able to

25   get some sort of absolute statement that litigation counsel

1    was not involved at all in any business communications and

2    just simply be able to make that statement on the record to

3    the Court.  Effectively, an omnibus privilege claim over

4    such communications.

5         Part of the issue that we're facing here is that my

6    firm was not involved at the time that this original lawsuit

7    was filed.  We got involved later.  So I would like to

8    confer with our co-counsel and be able to get some facts to

9    the opposing side and to Your Honor, and I think we may be

10   able to resolve this if we can do that.

11             THE COURT:  So why don't you do that, and can you do

12   that within the next week?

13             MR. DEVLIN:  Absolutely.

14             THE COURT:  And then talk with them and then file

15   some notice with the Court.  I won't take any action until I

16   hear back and then I'll decide.

17             MR. DEVLIN:  Thank you, Your Honor.

18             MR. REITER:  I will say, just to close out the issue,

19   Your Honor, I'm not sure that -- while I accept the

20   representations, I would still like to see the communications.

21   We've made representations about personal jurisdiction that

22   they insisted on testing, and so -- but we'll work it out over

23   the next week, or at least try to.

24             THE COURT:  No, that's fine.  That's fine.

25         Okay.  The next dispute is the issue regarding the

1    deposition hours, and I think you -- it's a question of how

2    you count the hours I guess among the Defendants.  Is that

3    the dispute?

4          MR. REITER:  I think we're pretty close, Your Honor.

5    The issue that we have is, as I understand it, there's 40 hours

6    per side.  The question is we have three cases that are not

7    consolidated.  And we've agreed that, for example, to the

8    extent the three parties take the deposition of the inventor

9    and they're talking about his activities related to claims that

10   are commonly asserted against each of the Defendants, then that

11   should count against each of the Defendant's time.

12         But again, going back to the point that we don't know

13   what's accused against any of the individual Defendants, if

14   the banks, for example, are accused of a claim that the

15   Micro Focus group is not and the banks want to take the

16   inventor's deposition about his work that led to that claim

17   or what's claimed there, that time should not count against

18   the Micro Focus group.  And likewise, if there are claims

19   against the Micro Focus group that are not asserted against

20   the banks, then that time should not be counted against the

21   banks.

22         So I think we're pretty close, but given that there are

23   three separate cases and they've claimed and alleged and

24   continue to allege that the banks are separate manufacturers

25   and we don't know what it is, we don't want to give up time

21

1    over issues that don't cover all the Defendants.

2              THE COURT:  Right.

3              MR. PARKER:  Your Honor, I don't think, as a generic

4    point, we're opposed to that.  We're just trying to make sure

5    that -- we're in a situation here where we have three separate

6    actions with three separate groups of Defendants but the same

7    counsel on the other side for all of them.  And we just don't

8    want to be disadvantaged by that fact, and so if we can just

9    have an understanding, and here we are saying it in open court,

10   that if a deposition is taken that goes to validity issues, for

11   example, they're going to be common to all three cases and so

12   it should count against all three cases.  If it's being taken

13   by the same counsel in all three cases, they shouldn't get

14   three times as much time.

15             THE COURT:  Right, I understand.  I think we're close

16   to the same page.  Here's what I would say is -- I mean, I

17   agree this idea of if it's something related to just your

18   client, that wouldn't necessarily count against that time.

19        However, what I would say is I make myself accessible,

20   so if you think there is some abuse going on, either at a

21   deposition or later, you can reach out to the Court.

22        And the Court does require -- it will be in the

23   Scheduling Order.  You can't file a motion to compel without

24   calling the Court first.  I handle most of the discovery

25   disputes.  I just get on the phone, on the record here via

22

1   telephone, and so I make myself available in any of my

2   cases.

3       So if that becomes an issue, you don't have to file a

4   motion.  If you can't work it out, then just call the Court

5   and I'll resolve that dispute.  But the general proposition

6   the defense has I don't have a problem with.

7       I think the next dispute -- was there a dispute

8   regarding requests for admissions?

9           MR. PARKER:  Your Honor, I think that's more or less

10  the same issue here.  So if there's a request for admission

11  that would be applicable to all three parties, then we think it

12  should -- they shouldn't get 75 different ones.

13          THE COURT:  I agree.

14          MR. REITER:  And that's the way we're doing it with

15  the interrogatories.  I mean, we have agreement on that.  If

16  there's a common issue, then that would count.  But if there's

17  not, then it wouldn't.

18          THE COURT:  I agree.  I know the issue of the

19  protective order -- of course, I encourage the parties to try

20  to come to an agreement on one.  If not, the Court will use the

21  standard one is typically the one the Court will employ unless

22  y'all come up with some other changes.

23      And then I don't know that y'all -- Plaintiff says the

24  Court's general protective order is fine.  Y'all want some

25  changes.  See if y'all can work that out, and then if not,

1    then just let the Court know and I'll decide if there is a

2    dispute.

3            MR. REITER:  We've sent them a draft.  We sent it

4    late last week and I know it will take some time for them to

5    work it out or work through it, but I'm sure we can have some

6    productive conversations on that.

7            THE COURT:  That's fine.  Then Plaintiff thinks the

8    trial time for each case will be about five days.  You think

9    it's going to be eight to ten.

10           MR. REITER:  Again, based on what we know.  I mean,

11   it may be less.  It seems premature at this point to really

12   figure that out given, again, there's 169 claims.  We don't

13   know what products.

14           THE COURT:  I think I've only -- I've had six patent

15   trials and they have varied from five to eight days typically.

16       I will say that some of my patent cases I do timed

17   trials.  I don't know what y'all are used to.  If both sides

18   want the Court to impose that, I'll do that.  I've tried

19   some without that.

20       Judge Gilstrap does timed trials on all his civil

21   cases.  I have never done that.  But I will say I had a

22   civil trial this summer, a trade secret case, that they said

23   it would take ten days and we spent a month or 17 days doing

24   that, almost a month.  So that case has made me think, well,

25   maybe I need to consider timed trial issues.  But we'll deal

24

1   with that at a later date.

2       What about -- I think that's all the disputes that I

3   saw in the case management report.  Is there something else

4   that I'm missing?

5               MR. REITER:  I think that -- I think that covers it.

6               MR. PARKER:  Not from us, Your Honor.

7               MR. REITER:  Yes, Your Honor.

8               THE COURT:  Just some general background, if we get

9   to trial, just so you know kind of my procedure, I do a little

10  bit of the voir dire but then I turn it over to the attorneys,

11  and it's untimed voir dire so I give you as much time as you

12  need.  If we need a questionnaire, we'll talk about that at the

13  Pretrial Conference, but I allow that if the parties want to

14  agree to a questionnaire.

15      Just so you know too, I strike through the panel, so I

16  do increase the number of peremptory strikes.  After we do

17  strikes for cause and hardship, then I increase the number

18  so that we utilize the entire panel or as much of the panel,

19  unless I have an odd number of jurors.

20      I allow the jury to ask questions of witnesses, and so

21  we'll go over that procedure at the Pretrial Conference but

22  I wanted you to know that.

23      So that's kind of generally -- the Court likes jury

24  trials.  I'm in trial a lot.  They're fun from the Court's

25  perspective, maybe not from the attorneys' perspective.

25

1      What else can I do for y'all?  From the Plaintiff,

2   anything I can do?

3          MR. PARKER:  No, Your Honor, I don't think so.

4          THE COURT:  From the defense?

5          MR. REITER:  We have a pending motion to transfer, as

6   I'm sure Your Honor knows, but I know we're not here to argue

7   that right now.

8          THE COURT:  No, I know.  We'll get to that in due

9   course.

10         MR. REITER:  I expect so.  Thank you, Your Honor.

11         THE COURT:  Then if we get to the issue and time for

12  Markman, at some point I will appoint a technical advisor but I

13  won't do it today.  We'll do it at some point when we get

14  closer when the briefs are filed for the claim construction.

15     Well, if there's nothing further from y'all, I'll

16  excuse y'all.  I have a note to take up with my criminal

17  case.  But thank you very much.  And it wasn't -- there

18  actually weren't as many disagreements as I thought there

19  would be.  It didn't take us as long.  So thank y'all and

20  have a great day.

21

22  I certify that the foregoing is a correct transcript from

23  the record of proceedings in the above-entitled matter.

24  _____          _____

    Jan Mason                                Date

25