IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA CORP., <br><br> Defendant. | Case No. 4:18-cv-00519-ALM <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANT'S MOTION TO ENFORCE P.R. 3-1**

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND..................................................................................................2

III. ARGUMENT............................................................................................................................5

    A. The Court Should Strike Certain Portions of Wapp's Contentions That Are Clearly Improper. ..........................................................................................................6

        1. Wapp's Charting of the "Micro Focus-related Accused Systems" Violates P.R. 3-1. ...........................................................................................................6

        2. Wapp's "Additional Accused Systems"—Exhibits 4-6—Should Be Stricken. .........................................................................................................10

    B. The Court Should Compel Wapp to Provide Clear Disclosures. .............................13

IV. CONCLUSION......................................................................................................................15

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alacritech Inc. v. CenturyLink, Inc.*,
  No. 2:16-cv-693-JRG-RSP, 2017 WL 3007464 (E.D. Tex. July 14, 2017) ..................8, 11, 13

*Broadcom Corp. v. Emulex Corp.*,
  No. SACV 09-01058-JVS, 2010 WL 11465322 (C.D. Cal. June 30, 2010) ..........................10

*Computer Acceleration Corp. v. Microsoft Corp.*,
  503 F. Supp. 2d 819 (E.D. Tex. 2007) .................................................................................13

*Connectel, LLC v. Cisco Sys., Inc.*,
  391 F. Supp. 2d 526 (E.D. Tex. 2005) .......................................................................5, 11, 13

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*,
  No. 6:07-CV-559, 2009 WL 81874 (E.D. Tex. Jan. 12, 2009) .............................................12

*Implicit, LLC v. Huawei Techs. USA, Inc.*,
  No. 6:17-cv-00182-JRG, slip op. (E.D. Tex. July 2, 2018) ..................................................12

*Motorola, Inc. v. Analog Devices, Inc.*,
  No. 1:03-cv-131, 2004 WL 5633735 (E.D. Tex. Apr. 8, 2004) ..............................................5

*Rapid Completions LLC v. Baker Hughes Inc.*,
  No. 6:15-CV-724, 2016 WL 3407688 (E.D. Tex. June 21, 2016) ........................8, 12, 14, 15

*Realtime Data, LLC v. Packeteer, Inc.*,
  No. 6:08-CV-144, 2009 WL 2590101 (E.D. Tex. Aug. 18, 2009) ..........................................5

*Semcon IP Inc. v. ZTE Corp.*,
  No. 2:16-CV-00437, 2018 WL 4501808 (E.D. Tex. Feb. 28, 2018) .......................................9

*SSL Servs., LLC v. Cisco Sys., Inc.*,
  No. 2:15-CV-00433, 2016 WL 727673 (E.D. Tex. Feb. 24, 2016) .........................................9

*Sycamore IP Holdings LLC v. AT&T Corp.*,
  No. 2:16-cv-588-WCB, 2018 WL 1695231 (E.D. Tex. Apr. 6, 2018) ..................................15

*Tivo Inc. v. Samsung Elecs. Co., Ltd.*,
  No. 2:15-cv-1503-JRG, 2016 WL 5172008 (E.D. Tex. July 22, 2016) ....................8, 11, 13

*Traxcell Techs., LLC v. Huawei Techs. USA Inc.*,
  No. 2:17-cv-00042, 2017 WL 6559256 (E.D. Tex. Dec. 21, 2017) ...............6, 7, 8, 13, 14, 15

*Traxcell Techs., LLC v. Samsung Elecs. Am., Inc.*,
  Case No. 2:17-cv-42, Dkt. No. 57, slip op. (E.D. Tex. Sept. 9, 2017) ..................................15

I.       INTRODUCTION

Plaintiffs Wapp Tech Limited Partnership and Wapp Tech Corp (collectively, "Wapp") filed this case nearly 18 months ago. Throughout this litigation, Wapp has engaged in a shifting sands approach. Wapp did so when it opposed Micro Focus International plc's motion to dismiss for lack of personal jurisdiction—initially arguing that personal jurisdiction existed based on facilities and employees in the District, but later shifting its argument to one based on alter ego. And Wapp has done so in this case—limiting its infringement allegations in its Complaint to only software products Bank of America Corporation ("Bank of America") licensed from Micro Focus subsidiaries, but, later, in opposition to Bank of America's motion to stay, broadening its allegations to allege that Bank of America infringed based on products, e.g., a mobile check deposit app, allegedly developed independent of the accused Micro Focus products. Now, in its P.R. 3-1 infringement contentions, Wapp continues that shifting sands approach. In its contentions, Wapp ignores the mobile check deposit app spotlighted in Wapp's opposition to the motion to stay, instead providing only generic language that neither identifies each accused non-Micro Focus product, nor specifically identifies how *any* non-Micro Focus product allegedly infringes. The District implemented the Local Patent Rules ("the Rules") to prevent parties from engaging in shifting sands litigation especially with respect to infringement theories. Bank of America thus respectively requests that the Court enforce those Rules by striking portions of Wapp's contentions that fall far outside the bounds of the Rules, while also compelling Wapp to clarify its contentions to provide Bank of America with the notice required by the Rules.

Wapp's P.R. 3-1 contentions are insufficient for three main reasons. First, for the so-called "Micro Focus-related Accused Systems," Wapp improperly agglomerates discrete software products and functionalities into a single claim chart, while at the same time, asserting that each individual product or functionality constitutes an accused instrumentality. Second, Wapp accuses

1

a category of products (i.e., the "Additional Accused Products") of infringing 117 claims but, while it purports to identify something called "UI TestRunner"—based on a 2015 job review from a third-party posting—as the *sole* additional "product," Wapp fails to explain what that product is, why Wapp "believes" it infringes, and, despite the requirement of the Rules, fails to explain, claim element-by-element, how that product allegedly infringes.  Third, Wapp's purported "Evidence of Infringement" for the "Micro Focus-related Accused Systems" is a hodgepodge of inconsistent color-coding, mismatched screenshots, and missing claim elements, making it impossible for Bank of America to understand Wapp's infringement theories.

Bank of America thus respectfully requests that the Court (1) strike the portions of Wapp's contentions that refer to any products other than the products that Wapp has included in its claim charts; (2) limit Wapp's contentions to only the "systems" or combinations of products that Wapp has actually identified and charted in its claim charts; and (3) compel Wapp to clearly state its theories of infringement and the bases therefore.

## II.   FACTUAL BACKGROUND

On July 20, 2018, Wapp filed its Complaint alleging infringement of U.S. Patent Nos. 9,971,678 (the "'678 Patent"), 9,298,864 (the "'864 Patent"), and 8,924,192 (the "'192 Patent") (collectively, the "Asserted Patents") against Bank of America for its use of certain Micro Focus software products.  Dkt. #1.  Wapp also filed suits asserting the same patents against Micro Focus International plc—the parent holding company to the developers of the accused software products—and fellow customer Wells Fargo & Company.  Dkt. #1 in 4:18-cv-501; Dkt. #1 in 4:18-cv-469.  Wapp's complaints against the banks identified only Micro Focus products and functionalities as the bases for Wapp's infringement claims, and Wapp attached the same "infringement" chart to the complaints against the banks as it used with its complaint against Micro Focus International plc.

Bank of America, as a customer of the accused software products, filed a motion to stay pursuant to the customer suit exception. *See, e.g.*, Dkt. #10. Wapp opposed the motion, arguing that the motion was premature in that "Wapp ha[d] not yet had a chance to provide its infringement contentions under the Local Patent Rules." *See, e.g.*, Dkt. #14 at 9. Wapp went on to promise that its "infringement contentions will further elucidate Wapp's preliminary infringement theories regarding Bank of America's infringing acts." *See id.* Although not in its Complaint, Wapp alleged Bank of America was a "true defendant" because:

- Bank of America "directly infringed" claim 60 of the '192 Patent by providing an application that allowed users to take a picture of a check for deposit. Dkt. #14 at 5.

- A single Bank of America job review from 2015 (posted on a non-Bank of America website) made a passing reference to "UI TestRunner (BoA proprietary)," which Wapp asserted infringed "given the name." *Id.* at 6.

The Court denied the motion to stay.

Pursuant to this Court's Scheduling Order, Wapp served its P.R. 3-1 infringement contentions (the "Original Contentions") on November 7, 2019. Despite the nearly eighteen months that had passed since it filed suit, and despite the promises made in its opposition to the motion to stay, the Original Contentions were, with one exception, nearly identical to the charts attached to Wapp's complaint. *Compare* Dkt. #1-14, 1-15, 1-16, *with* Ex. A at A-8–A-129. The exception resided in what Wapp titled "Exhibit 2"—a "chart" of 117 claims, where Wapp repeated the following statement 117 times:

> Bank of America has proprietary software products, that may also integrate third party development tools, for the development and testing of mobile applications that are believed to meet the elements of this claim. On information and belief, Bank of America has developed their own Bank of America-related products that are believed to be infringing, including at least a product named UI TestRunner. As these are software products whose functionality cannot be discerned from publicly available sources, Wapp has served discovery on Bank of America seeking additional information and will supplement these charts once such discovery has been produced.

*See, e.g.*, Ex. A at A-345. Other than inserting the name "UI TestRunner," Wapp failed to provide any "information" or support its "belief" in any way that UI TestRunner infringed, much less identify any "Evidence of Infringement" regarding any product beyond the Micro Focus-related products. Indeed, the Original Contentions made no reference at all to the check depositing app described in Wapp's opposition to the stay motion.

Bank of America immediately notified Wapp of its deficient contentions and requested a meet and confer. Dkt. #38-1 (November 11, 2019 Email from M. Reiter to H. Parker). In advance of the meet and confer, Bank of America provided a detailed explanation of how Wapp's contentions violated P.R. 3-1, for example, by failing to chart each accused product and failing to show how each element in each claim is found within the accused products. Ex. C (November 14, 2019 Email from N. Jalali to H. Parker). During the meet and confer, Wapp agreed to revise its Original Contentions and, on December 2, 2019, served revised contentions (the "Revised Contentions").

While Wapp shifted some language and added some color-coding, the Revised Contentions also fail to comply with P.R. 3-1, which Bank of America promptly explained. Dkt. #36-1 (December 7, 2019 Email from M. Reiter to H. Parker). Like the Original Contentions, the Revised Contentions purport to identify two categories of accused products: the "Micro Focus-related Accused Systems," for which Wapp names certain Micro Focus products, and the "Additional Accused Systems," for which Wapp fails to support an allegation of infringement for a single product and attempts to excuse that failure by purporting to identify every element of 117 claims as a "software limitation." As with the Original Contentions, the Revised Contentions make *no reference* to the check depositing app.

4

**III. ARGUMENT**

"The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary[1] infringement contentions before discovery has even begun." *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005). As such, the Patent Rules require that the "parties formulate, test, and crystallize their infringement theories *before* stating their preliminary infringement contentions . . . [so] the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for *Markman*, summary judgment, trial, and beyond." *Id.* (emphasis added). Many courts within this District have held that the primary function of infringement contentions is notice. *See, e.g.*, *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-CV-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009).

Given the notice function, the exchange of early contentions "is specifically designed to require parties to crystalize their theories of the case, and to prevent a 'shifting sands' approach to patent litigation." *Motorola, Inc. v. Analog Devices, Inc.*, No. 1:03-cv-131, 2004 WL 5633735, at *1 (E.D. Tex. Apr. 8, 2004). "Specific theories create a specific trajectory for the case," *Connectel*, 391 F. Supp. 2d at 527, and help to define the boundaries of subsequent discovery and to narrow the issues for claim construction. To this end, the Rules require a plaintiff to, at a minimum, identify (1) each accused instrumentality "separately for each asserted claim" and as "specific[ally] as possible," and (2) where each element of each asserted claim is found within each accused instrumentality. *See* P.R. 3-1(b), (c). Wapp's perfunctory contentions make its infringement theories a moving target, which runs counter to P.R. 3-1's intended purpose that Wapp solidify its

---

[1] In 2006, the District revised the Rules to remove the word "preliminary." *See* General Order 06-15 at 27–28 (Oct. 27, 2006).

5

theories of how the accused products allegedly infringe. *See Traxcell Techs., LLC v. Huawei Techs. USA Inc.*, No. 2:17-cv-00042, 2017 WL 6559256, at *4 (E.D. Tex. Dec. 21, 2017).

    **A.    The Court Should Strike Certain Portions of Wapp's Contentions That Are Clearly Improper.**

        **1.    Wapp's Charting of the "Micro Focus-related Accused Systems" Violates P.R. 3-1.**

           (a)    Wapp Has Failed to Chart on an Element-by-Element Basis Each Accused Instrumentality.

P.R. 3-1(c) requires Wapp to provide a chart "identifying *specifically* where *each* element of each asserted claim is found within *each* Accused Instrumentality." The cover pleading to the Revised Contentions defines the "Micro Focus-related Accused Systems" to "include":

> HP LoadRunner, HP Performance Center and Network Virtualization (in various releases and literature sometimes called Micro Focus Network Virtualization, Shunra for HP Software, Shunra Network Virtualization, HP Network Virtualization, and HPE Network Virtualization) and may also optionally include HP StormRunner, HP Mobile Center.[2]

Ex. B at B-2. Relying on this definition, Wapp begins each chart of each asserted claim with the following statement: "Each Micro Focus-related Accused System meets the elements of this claim as would any other Micro Focus product having similar functionalities." *See, e.g.*, Ex. B at B-12. But Wapp's charts do not show how *each* Micro Focus-related Accused System meets the elements of any one claim. Instead, for each asserted claim, Wapp provides a chart that agglomerates products and cites to documentation for some, but not all, of the identified Micro Focus-related Accused Systems, while also mixing and matching citations from distinct products and

---

[2] Missing from this long list, but referenced in the charts for the '864 Patent, is "TruClient Mobile." *See, e.g.*, Ex. B at B-125–B-132, B-140. Also missing from the list is "HP Network Capture," but it is referenced, for example, in the charts for the '678 Patent. *See, e.g., id.* at B-19. It is, thus, unclear whether TruClient Mobile and HP Network Capture are included in the accused systems.

functionalities within the list of so-called Micro Focus-related Accused Systems. In other words, the charts do not show how each Micro Focus-related Accused System separately meets the elements of any one claim, fail to provide notice of exactly what Wapp accuses, and violate the Rules by attempting to cover unnamed products "having similar functionalities."

Wapp's effort to show infringement by relying on the alleged operation of one accused product for a particular limitation of a claim while using a different accused product for another limitation of the *same* claim, rather than separately charting "each" named product of each Micro Focus-related Accused System, is readily apparent. For example, for Claim 1 of the '678 Patent, Wapp cites to five exhibits: (1) "HP LoadRunner and HP Performance Center with Shunra Network Virtualization" (Exhibit A), (2) "HP Network Virtualization for Mobile" (Exhibit B), (3) "HP Network Virtualization for Mobile, Shunra vCat for Mobile Manual" (Exhibit C), (4) "Micro Focus Network Virtualization Data Sheet" (Exhibit D), and (5) "HP Network Capture User Guide" (Exhibit E). *See, e.g.*, Ex. B at B-12–B-20.[3] Wapp relies on Exhibits A and B for the preamble, relies on Exhibits B and C for the first identified claim element, and relies on Exhibits C, D and E for the last identified claim element. But as even Wapp's definition of Micro Focus-related Accused System recognizes, "HP LoadRunner" is a separate product, as is "HP Performance Center," and as is "Network Virtualization." Agglomerating these separate products to cover separate claim limitations does not show how "each element of each asserted claim is found within each Accused Instrumentality." Nor does it provide Bank of America with the requisite notice of what exactly is accused and why. *Traxcell*, 2017 WL 6559256, at *5.

---

[3] Notably, rather than use current, publicly available documentation for the "Micro Focus-related Accused Systems," Wapp relies on documents from 2013 (B-241–B-245), 2014 (B-246–B-250), 2012 (B-251–B-378), and 2015 (B-384–B-439).

Further, to the extent Wapp attempts to justify its amalgamation of products by pointing to its boilerplate contention that "[b]ecause the named products are integrated with each other, they act as a system and are used as an integrated whole," Ex. B at B-2, courts in this District have rejected such efforts. *See Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693-JRG-RSP, 2017 WL 3007464, at *2–3 (E.D. Tex. July 14, 2017); *Tivo Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:15-cv-1503-JRG, 2016 WL 5172008, at *3 (E.D. Tex. July 22, 2016); *Rapid Completions LLC v. Baker Hughes Inc.*, No. 6:15-CV-724, 2016 WL 3407688, at *7 (E.D. Tex. June 21, 2016). Because Wapp's Revised Contentions do not "identify how each accused product is technically or functionally equivalent to a charted product," Wapp's definition of Micro Focus-related Accused System should be stricken. *See, e.g.*, *Traxcell*, 2017 WL 6559256, at *5. The Court, moreover, should limit Wapp to the combinations of products and functionalities that Wapp actually charted (i.e., LoadRunner with Network Virtualization, Performance Center with Network Virtualization, and Mobile Center with TruClient – Native Mobile).

Additionally, Wapp purports to include HP StormRunner as a "Micro Focus-related Accused System[]" yet it only cites to StormRunner in support of one element (i.e., "interact with a network") of one limitation of a single asserted claim. *See* Ex. B at B-52–B-53. That Wapp provides no other information about StormRunner—let alone, *any* explanation for how StormRunner is "technically or functionally equivalent" to a charted product—is insufficient to meet Wapp's obligations under P.R. 3-1(c). *See Traxcell*, 2017 WL 6559256, at *5. The Court should strike all portions of Wapp's Revised Contentions that refer to HP StormRunner.

     (b)  Wapp's Invocation of P.R. 3-1(g) for *Every* Claim Limitation Is Improper.

For each element of each asserted claim, Wapp begins its charts for the Micro Focus-related Accused Systems with the following statement:

> This claim element is, at base, a software limitation. As such, and in accordance with the Scheduling Order, Wapp is not required to identify where such limitation is met in the Micro Focus-related Accused Systems at this time if it cannot do so without discovery of source code or other software information. Thus, while this claim chart sets forth substantial information as to how the Micro Focus-related Accused Systems meet this limitation, it is Wapp's expectation that Wapp will supplement its contentions after receipt of defendants' source code and related discovery.

*See, e.g.*, Ex. B at B-14. In addition to misstating what P.R. 3-1(g) permits, this universal reliance on P.R. 3-1(g) for every claim limitation is improper.[4] To invoke this Court's P.R. 3-1(g), Wapp must "identify the elements as a software limitation," and is permitted, for those specific elements, to supplement its P.R. 3-1 disclosure as to only those elements. Dkt. #29 at 5. P.R. 3-1(g) "does not allow [Wapp] the opportunity to modify or amend any non-software claim contentions." *See id.*; *see also SSL Servs., LLC v. Cisco Sys., Inc.*, No. 2:15-CV-00433, 2016 WL 727673, at *7 (E.D. Tex. Feb. 24, 2016) ("Rule 3-1(g) is designed to ameliorate the 'unique challenges' present in some software cases, in which a plaintiff requires access to source code for the accused products in order to comply with its disclosure obligations under Rule 3-1."). By asserting *every* claim element is a "software limitation," Wapp improperly attempts to broaden P.R. 3-1(g) and use that broadening as a license to later amend the entirety of its contentions. And, in its ubiquitous invocation of P.R. 3-1(g), Wapp also ambiguously references "other software information" and "related discovery" as a basis for supplementation. However, P.R. 3-1(g) is specifically limited to "source code" as the subject of the supplementation. *Semcon IP Inc. v. ZTE Corp.*, No. 2:16-CV-00437, 2018 WL 4501808, at *1 (E.D. Tex. Feb. 28, 2018) (allowing amendment pursuant to P.R.

---

[4] In its Original Contentions, Wapp did not reference P.R. 3-1(g) *at all* with respect to the "Micro Focus-related Accused Systems" (then Exhibit 1) and only *once* in the cover pleading with respect to the "Additional Accused Systems." It was only *after* Bank of America notified Wapp that the Original Contentions failed to comply with the Rules, that Wapp turned to P.R. 3-1(g). *Compare* Ex. A (Original Contentions), *with* Ex. B (Revised Contentions).

9

3-1(g) when plaintiff only added "source code citations" and made no other changes). Wapp's overbroad, boilerplate reliance on the P.R. 3-1(g) contention should also be stricken.[5]

### 2. Wapp's "Additional Accused Systems"—Exhibits 4-6—Should Be Stricken.

As previewed above, Wapp's Revised Contentions include charts (Exhibits 4–6) that purport to cover "Additional Accused Systems." In those charts, Wapp does not identify a *single* product or functionality, let alone explain where a *single* element is met in these unidentified products. Instead, for the preamble of every asserted independent claim Wapp copies and pastes the same boilerplate contention that Wapp believes "Bank of America has developed additional mobile testing products . . . [that] are software products whose functionality cannot be discerned from publicly available sources." *See, e.g.*, Ex. B at B-169. And for every limitation of the 117 claims identified in these exhibits, Wapp copies and pastes a further boilerplate contention that the "claim element is, at base, a software limitation, [and therefore] Wapp is not required to identify where such limitation is met in the Accused Systems at this time . . . ."[6] *See, e.g.*, *id.*

Wapp attempts to fill the informational void of Exhibits 4–6 with implication and innuendo in the cover document to the Revised Contentions, asserting:

- The "placement" of "UI TestRunner" before "LoadRunner" "strongly indicates that the two products are similar testing products that perform similar functionality." Ex. B at B-3.

- The word "proprietary" before "BofA" means UI TestRunner is a "custom software product" that is "competitive to LoadRunner" or "a custom testing solution that is integrated into LoadRunner." *Id.*

---

[5] Despite Wapp's failure to properly invoke P.R. 3-1(g), Bank of America understands that the supplier of the accused software products made the source code available for inspection within thirty days of receiving Wapp's Original Contentions. *See* Dkt. #126 in 4:18-cv-469 at 1 n.1.

[6] Wapp's generic assertion of these claims is even more problematic given that the Court's Scheduling Order (Dkt. #29) requires the parties to exchange claim construction terms by January 6, 2020 and address narrowing of the asserted claims and prior art by January 10, 2020.

10

- The alleged, general work experience of the employee "supports the strong likelihood that Bank of America is an independent test application developer." *Id.* at B-3–B-4.

- Bank of America is a "manufacturer of infringing software (i.e., their mobile banking applications)" because it has invested money in technology development. *Id.* at B-4.

This is nonsense, with no stated correspondence to the requirements of the asserted patent claims.

First, Wapp has failed to identify a single *Bank of America* publication or website that identifies "UI TestRunner," much less identify it as a proprietary Bank of America product. Second, that Bank of America invests in "technology" provides no basis to assume it "manufactures infringing software"; if so, one could assume virtually every company manufactures infringing software. Wapp's allegations directed to the unnamed "Additional Accused Systems" boil down to this: Because, on March 11, 2015, one person posted a job review on a third-party website and made a passing reference to something called "UI TestRunner (BoA proprietary)" in the same line as "LoadRunner," Bank of America *may* have other testing products that *may* have similar functionality to LoadRunner. The Patent Rules do not allow for these types of fishing expeditions. *See Broadcom Corp. v. Emulex Corp.*, No. SACV 09-01058-JVS, 2010 WL 11465322, at *1 (C.D. Cal. June 30, 2010) ("Rule 3-1 infringement contentions generally come before discovery in order to avoid fishing expeditions. The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim.") (internal quotations and citations omitted). The nearly five-year-old third-party posting does not support the allegation Wapp makes nor invite the fishing expedition Wapp wishes to take. *See Connectel*, 391 F. Supp. 2d at 528.

At bottom, Wapp improperly attempts to put "the onus on [Bank of America] to determine what devices infringe—which is contrary to the intent of the Patent Rules." *See Alacritech*, 2017 WL 3007464, at *3; *see also Tivo*, 2016 WL 5172008, at *3 ("Here, [plaintiff] only identified four accused DVR set-top box products and expects [defendant] to locate the remaining [defendant]

products that might be implicated by [plaintiff's] infringement theory."); *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, No. 6:07-CV-559, 2009 WL 81874, at *5 (E.D. Tex. Jan. 12, 2009) ("A party may not blindly accuse every product a defendant produces and expect to narrow its claims at its own convenience."); *Rapid Completions*, 2016 WL 3407688, at *6 ("It is not a defendant's job to assume how a plaintiff believes each claim element is met or to assume how a plaintiff alleges the Accused Instrumentality infringes."). Even Wapp appears to recognize that these exhibits fail to satisfy the Rules by "agree[ing] that [Bank of America] does not need to present invalidity contentions as to . . . the claims presently applicable only to the Additional Accused Systems." Ex. B at B-5.

Wapp's reliance on P.R. 3-1(g), moreover, to justify its lack of detail is improper and does not exempt Wapp from actually identifying the products accused of infringement and the basis for Wapp's belief that these unnamed products satisfy every element of every asserted claim. "[T]he P.R. 3-1(g) permissive amendment is intended to enable plaintiffs to more concretely chart their infringement contentions, demonstrating 'how' accused technologies meet limitations, but not to enable plaintiffs to add in additional accused aspects of the technology at issue, even if, following production [of source code], additional aspects may indeed be worth pursuing." *Implicit, LLC v. Huawei Techs. USA , Inc.*, No. 6:17-cv-00182-JRG, slip op. at 4 (E.D. Tex. July 2, 2018). Indeed, while Wapp also (albeit improperly) asserts every element of every claim charted in Exhibits 1–3 of the Revised Contentions is a "software limitation," within those charts Wapp identifies actual products and provides some (albeit deficient) explanation for why it identifies those products. At bottom, Wapp cannot rely on P.R. 3-1(g) to include unidentified products and thereby maintain the smokescreen that Bank of America is more than just a customer.

Because Wapp has not "explain[ed] with great detail [its] theories of infringement," much

12

less identified the additionally accused products, as the Rules require, Wapp should not be permitted to use these charts as a fishing expedition to uncover products and theories that Wapp itself cannot even identify. *See Connectel*, 391 F. Supp. 2d at 528; *Alacritech*, 2017 WL 3007464, at *2–3 (finding catch-all language identifying accused products as "any version of [defendant's] controller, card, or adapter products capable of providing, or configured to provide, [the infringing] functionality" had "no effect under the rules and may be disregarded"); *Tivo*, 2016 WL 5172008, at *3 (E.D. Tex. July 22, 2016) (rejecting the use of catch-all language "to sweep in products that have not been identified with sufficient specificity in the Original Contentions"); *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 823 (E.D. Tex. 2007) (striking plaintiff's boilerplate infringement contention that "[b]ased on information on belief, [plaintiff] also contends that Microsoft Windows Vista infringes the asserted claims of the [asserted patent]"). Respectfully, therefore, the Court should strike Exhibits 4–6 of the Revised Contentions.

## B. The Court Should Compel Wapp to Provide Clear Disclosures.

The claim charts that purport to provide some substance regarding Wapp's infringement allegations are also deficient and ambiguous. The lack of clarity "make[s] it impossible for [Bank of America] to determine the theory of infringement with any certainty." *See Traxcell*, 2017 WL 6559256, at *4. Wapp's charts use color-coding purportedly to link—without any explanation— the "claim elements" to "evidence of infringement." But because Wapp indiscriminately color codes the excerpted materials,[7] while also jumping among and between distinct products, without specifying which excerpt goes with which part of the claim language, Wapp's charts are an

---

[7] During the meet and confer, Wapp offered to re-color the chart. That offer, however, does not address the absence of any clear linkage between the color-coded text and the claim language, nor does it address Wapp's amalgamation of disparate products to allege infringement of a single claim.

13

"unintelligible maze, with color-coding that is not always consistent, attachments, exhibits, and cross-references to summaries allegedly explaining what the asserted claims require and the accused products include." *Traxcell*, 2017 WL 6559256, at *4.

As an example, for Claim 1 of the '678 Patent, Wapp color codes "software testing interface" green while also color-coding green "profile display windows." The text, however, states that the window highlighted in green is a profile display window, but two boxes on the figure are highlighted in green. *See* Ex. B at B-14. The text following the figure has several phrases colored in green, but again the chart fails to explain which green text goes with which part of the claim language. Moreover, much of the green text does not even appear related to the green claim language, e.g., "define a mobile test scenario that simultaneous emulates" (Ex. B at B-15) and "technology acquired from Shunra" (*id.* at B-17) are not related to the green text in the claim.[8]

As a further example, for Claim 1 of the '192 Patent, Wapp colors the claim language "network characteristics" purple as well as the claim language "encountered by the mobile device." To show satisfaction of these two *different* limitations, however, Wapp points to the same disclosures for both limitations. *Compare* Ex. B at B-153–B-156, *with id.* at B-157–B-159. And again, the text colored purple does not appear to relate to the purple colored claim language. In all of these examples,[9] which are illustrative of the lack of clarity appearing throughout the charts, Wapp does not specify which of the boxes tie to which claim language making it "impossible to determine what aspects of the [accused products] are alleged to meet the various limitations." *See*

---

[8] This same problem of green color coding related to the "profile display window" arises for Claim 1 of the '864 Patent, which is exacerbated because the chart does not even identify the source of the figure within the green box. Ex. B at B-101.

[9] Wapp's charts are replete with examples of these same deficiencies. Further examples include the claim charts for claim 1 of the '864 Patent, claim 1 of the '192 Patent, and claims 26, 37, and 45 of the '678 Patent.

*Traxcell*, 2017 WL 6559256, at *4; *see also Rapid Completions*, 2016 WL 3407688, at *5 ("Merely block quoting a defendant's own documents . . . does not necessarily put that defendant on notice of where the plaintiff believes the asserted elements are found.").

Wapp's charts are also silent regarding certain claim elements. For example, with respect to Claim 1 of the '864 Patent, Claim 1 of the '192 Patent, and Claims 1, 26, 37, and 45 of the '678 Patent, Wapp's infringement charts do not specify what in the accused products satisfy "configured to simulate," "simultaneously visually emulate," or "simultaneously visually simulate." Indeed, these claim limitations are not even color coded. Ex. B at B-14, B-31, B-45, B-57, B-101, B-153. By ignoring claim elements, Wapp has failed to "specifically [identify] 'where each element of each asserted claim is found within each [product],' which includes all elements of any dependent claim(s)." *Traxcell Techs., LLC v. Samsung Elecs. Am., Inc.*, Case No. 2:17-cv-42, Dkt. No. 57, slip op. at 1–2 (E.D. Tex. Sept. 9, 2017) (emphasis added); *see also Traxcell*, 2017 WL 6559256, at *4–5; *Rapid Completions*, 2016 WL 3407688, at *6.

The Rules require specificity and clarity and do so to prevent a shifting sands approach to patent litigation. *See, e.g.*, *Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-cv-588-WCB, 2018 WL 1695231, at *10 (E.D. Tex. Apr. 6, 2018). Such uncertainty runs counter to the "clear path" for discovery and claim construction that the Rules were intended to create. Thus, Bank of America requests that Wapp be compelled to (1) fix its inconsistent color-coding; (2) clearly link which claim element is allegedly met by which cited excerpt; and (3) identify where each element of each claim is found in the accused system (as limited, discussed *supra* Section III.A.1(a)).

**IV. CONCLUSION**

For the foregoing reasons, Bank of America respectfully asks the Court enter the proposed order and require Wapp to comply with the Local Patent Rules.

Dated: December 23, 2019    By:  */s/ Mark N. Reiter*
              Mark N. Reiter
              Lead Attorney
              Texas State Bar No. 16759900
              mreiter@gibsondunn.com
              Ashbey N. Morgan
              Texas State Bar No. 24106339
              anmorgan@gibsondunn.com
              **GIBSON, DUNN & CRUTCHER LLP**
              2001 Ross Avenue, Suite 2100
              Dallas, TX 75201-6912
              Telephone: 214.698.3100
              Facsimile: 214.571.2907

              Neema Jalali
              njalali@gibsondunn.com
              **GIBSON, DUNN & CRUTCHER LLP**
              555 Mission Street, Suite 3000
              San Francisco, CA 94105
              Telephone: 415.393.8200
              Facsimile: 415.374.8409

              *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2019, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to CM/ECF participants in this case.

                                              */s/ Mark N. Reiter*
                                              Mark N. Reiter


**CERTIFICATE OF CONFERENCE**

On December 20, 2019, counsel for Defendant, Mark N. Reiter, conferred by phone with Henrik Parker, counsel for Plaintiffs, who stated Plaintiffs oppose the motion.

                                              */s/ Mark N. Reiter*
                                              Mark N. Reiter