1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF TEXAS
2                         SHERMAN DIVISION

3    WAPP TECHNOLOGY LTD           :        DOCKET NO. 4:18CV469
                                   :
4    VS.                           :        SHERMAN, TEXAS
                                   :        APRIL 1, 2020
5    MICRO FOCUS INTERNATIONAL     :        3:00 P.M.

6    WAPP TECHNOLOGY LTC           :
                                   :
7    VS.                           :        DOCKET NO. 4:18CV501
                                   :
8    WELLS FARGO                   :

9    WAPP TECHNOLOGY LTD           :
                                   :
10   VS.                           :        DOCKET NO. 4:18CV519
                                   :
11   BANK OF AMERICA               :

12                       TELEPHONE CONFERENCE
               BEFORE THE HONORABLE AMOS L. MAZZANT,
13                 UNITED STATES DISTRICT JUDGE

14   APPEARANCES (BY TELEPHONE):

15   FOR THE PLAINTIFF:           MR. TIMOTHY DEVLIN
                                  MR. HENRIK PARKER
16                                MR. ANDREW DEMARCO
                                  THE DEVLIN LAW FIRM
17                                1526 GILPIN AVENUE
                                  WILMINGTON, DE  19806
18

19

20   FOR THE DEFENDANT:           MR. MARK REITER
                                  MS. ASHBEY MORGAN
                                  GIBSON DUNN & CRUTCHER
21                                2100 MCKINNEY, SUITE 1100
                                  DALLAS, TX  75201
22
                                  MR. JORDAN BEKIER
23                                GIBSON DUNN CRUTCHER
                                  333 S. GRAND, 47TH FLOOR
24                                LOS ANGELES, CA  90071

25

2

1    COURT REPORTER:                MS. JAN MASON
                                    OFFICIAL REPORTER
2                                   101 E. PECAN #110
                                    SHERMAN, TEXAS  75090
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   PROCEEDINGS REPORTED BY MECHANICAL STENOGRAPHY, TRANSCRIPT

24   PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

25

1          THE COURT:  Good afternoon.  This is Judge Mazzant.

2     We're here in Case 4:18CV469, 4:18CV501 and 4:18CV519.

3          Everyone has already made their appearances, and again,

4     as I think my courtroom deputy just indicated, please

5     identify yourself every time you speak, because we are in

6     the courtroom with my court reporter trying to get a good

7     record.

8          And I believe this call was initiated by the Plaintiff

9     after I think motions to compel were filed and the Court

10    denied those.  So if -- whoever is going to speak on behalf

11    of the Plaintiff, if you would like to go ahead and identify

12    yourself and go first and tell me what's going on.

13          MR. DEVLIN:  Your Honor, thank you.  This is Tim

14    Devlin speaking on behalf of Plaintiff.  My colleague, Mr.

15    Parker, will deliver the argument, but I wanted to get on the

16    phone and just acknowledge the error we made in filing this as

17    a written motion originally.  I wanted to express to the Court

18    that we take Your Honor's procedures seriously, and my sort of

19    motto is make every mistake just one time.  We do have internal

20    procedures to try to prevent that.  They obviously did not

21    work, and I've thought about that and we have implemented

22    improvements in those procedures to make sure this doesn't

23    happen again, in this case or any other.

24          I just wanted to jump on the phone personally and make

25    sure Your Honor was aware of that, that we did take this

4

1  seriously and were not lightly taking anything about our

2  misstep in filing this as a written motion.

3          THE COURT:  Mr. Devlin, it's --

4          MR. DEVLIN:  If Your Honor wants any further

5  information on that, I'm happy to offer that.  I don't want to

6  waste anyone's time.

7          THE COURT:  No, that's --

8          MR. DEVLIN:  Whatever Your Honor would like.

9          THE COURT:  Mr. Devlin, thank you for the apology.

10  It's not necessary.

11     It's a procedure the Court has.  I will tell you, it

12  happens quite often that attorneys file this.  And I take no

13  offense whatsoever.  It's just I require more of this

14  informal procedure, and we resolve about 80 percent of the

15  discovery disputes this way, and hopefully I can do it

16  today.  But it's nothing to worry about.

17     Okay.  So, Mr. Parker, I understand you're going to

18  argue.

19          MR. DEVLIN:  Thank you, Your Honor.

20          THE COURT:  Go ahead.

21          MR. PARKER:  Thank you, Your Honor.  So this is

22  Henrik Parker.

23     And Wapp is here today seeking the Court's assistance

24  in compelling the Defendants in all of the three actions.

25  The positions taken, I believe, by the Defendants across all

5

1    three actions are identical with respect to this issue, so

2    it applies across the board, and our arguments apply across

3    the board as well.

4         And we are seeking to -- the Court's assistance to

5    compel the Defendants to comply with their discovery

6    obligations with respect to the scope of products as to

7    which they provide responsive discovery information.

8         Wapp has reasonably sought information going to various

9    Defendants' products and systems that embody various aspects

10   of the asserted claims.  And while we think that the

11   Defendants are actually obligated to provide that

12   information even without our specifically asking for it, we

13   have asked for it in various fashions, and the Defendants

14   have unilaterally and consistently refused to provide any

15   discovery as to any product other than three specific

16   product systems that were included in Wapp's original

17   infringement contentions.

18        So, in essence, they're refusing to give us anything

19   that goes to any product that wasn't specifically and

20   originally accused of infringement, and that has taken place

21   in document production, interrogatory responses, mandatory

22   disclosures, source code production and even Rule 30(b)(6)

23   deposition notices.

24        We believe that this is contrary to law, and I'll get

25   into that in a second, but perhaps I should be a little more

1   specific here about what it is we've asked for that they

2   haven't been giving us.

3        In our first set of interrogatories we set out a

4   specific definition of a term that we use, accused

5   instrumentality, and perhaps that term was a little

6   aggressive.  It could have been any term.  It could have

7   just been relevant systems or something.

8        But in any event, the definition included -- and I'll

9   quote a little bit here -- all products, systems or methods

10  that have been purchased, used, made or developed by or for

11  Defendants that are capable of or advertised or marketed as

12  being capable of.  And then we go on and describe various

13  acts of the kinds that are specifically covered in the

14  claims of the asserted patent steps.  So the definition

15  clearly is looking for stuff that relates to products that

16  may embody the patented claims.

17       We use that term then to seek various types of

18  information in the interrogatories, you know, about design,

19  function, operation of products, about the role played by

20  various entities in making and selling those, and, you know,

21  financial information and sales channels about them.

22       In response to those interrogatories, the Defendants

23  asserted an objection, general Objection No. 12, alleging

24  initially generically that the definition was overly broad

25  and burdensome, but then when they got specific, stating

1  that the Defendants were going to interpret the defined term

2  as referring only to three specific systems, systems that

3  the Defendants alleged were the only ones that, according to

4  them, we had purported to provide a chart identifying

5  specifically where each element was found within each

6  identified product, which according to them, was as required

7  by the Local Patent Rules.  So, in other words, they were

8  refusing to provide any discovery on any product beyond

9  those that were in our original infringement contentions.

10      Since the time of receiving those objections, they've

11  continually asserted that over all these other areas, and I

12  could certainly go through those but I don't know that we

13  need to at this point because the crux of the issue here is

14  really the overarching objection.  And once that's resolved,

15  I think both parties or all parties will be able to apply it

16  appropriately.

17      I will point out, however, that during various meet and

18  confer communications, and in particular, in a couple of

19  letters that I sent to opposing counsel on February 5th and

20  13th, we provided more extensive, specific lists of product

21  systems that we felt fell within that definition that I read

22  to you earlier and the kind of discovery that we believe we

23  were entitled to and that they had an obligation to give us.

24      Notably, the Defendants have never contended that our

25  definition was -- the list of products that we provided,

8

1   that that was not reasonably related to the elements of the

2   asserted claims.  There's really no dispute about the scope

3   being reasonable.  It's only about whether or not they have

4   to do anything beyond the specific products in our

5   infringement contentions, our original infringement

6   contentions.

7       So Wapp believes that this is legally improper because

8   it's well-established in this district, as in probably most,

9   if not all districts, that as stated in epicRealm Licensing

10  versus Autoflex Leasing, a case from this district in 2007,

11  relevant discovery in a patent infringement suit includes

12  discovery relating to the technical operation of the accused

13  products as well as the identity of the technical operation

14  of any products reasonably similar to any accused products.

15      There are a bunch of cases that are to the same effect,

16  and we can certainly provide those if you desire.

17      In that case, I think it was Judge Folsom, in ruling

18  that the scope of discovery wasn't limited to products

19  identified in the infringement contentions but also included

20  reasonably similar ones, the Judge said that this finding

21  best comports with the notice pleading and broad discovery

22  regime created by the Federal Rules and the right to develop

23  new information in discovery.

24      So this is the crux of the issue.  We think we're

25  entitled to discovery of products that are reasonably

9

1    similar to the accused products, but the Defendants have a

2    contrary view.

3         The definition was specifically tailored to encompass

4    not only the specifically identified ones but products that

5    were reasonably similar.  Defendants don't deny that.

6         The Defendants have access to their own products, which

7    we don't have full access to.  I'll talk about that in a

8    moment.  But certainly for them to determine which products

9    fit within this definition should not be a particular

10   hardship or burden for them.

11        And it's no different than any other ongoing obligation

12   that a defendant or a party has in any litigation, to make

13   reasonable decisions about what information is related to

14   the action and should be produced without being -- any need

15   to be specifically asked for by the other side.  So we think

16   the Defendants should be compelled to do that here.

17        In our meet and confers, the Defendants have contended

18   that we have to do more to get the information and that we

19   have to somehow meet what they describe as a four-part test

20   that they parsed from another case in this district,

21   Honeywell International versus Acer America, which according

22   to the Defendants they believe we have to show, one, that

23   the information sought is not publicly available; two, that

24   our infringement contentions gave the Defendant notice of a

25   specific theory of infringement; three, that the products we

10

1  seek discovery about operate in a manner that's reasonably

2  similar to that theory; and four, that we've been diligent

3  in seeking the information.

4      It's not entirely clear to us that this test is

5  mandatory or -- or controlling here.  Even if it is, we

6  don't think there's really any legitimate dispute that we've

7  met the standards.

8      As to the first factor, many -- these are not the kind

9  of products that you can just go into your local Best Buy or

10  Apple store or something and grab one off of the shelf.

11  They are sophisticated systems that are set up on servers

12  and accessed remotely.  And it is not something that we can

13  readily make the determination as to the breadth of products

14  or to fully analyze such products.

15      During the meet and confers, Defendants have implied

16  that at least some of the products have free demo versions

17  available on-line, and while that may be true to a certain

18  extent, clearly there are many products that -- for which no

19  such free demos are available.  And even, while we have

20  specifically asked them, they have been unwilling to confirm

21  for us that any such free demo actually is complete and

22  robust enough that it encompasses or evidences the full

23  complexity of these products, such that we could make use of

24  those to entirely determine one way or the other whether

25  something infringes or -- or prove our case if it did

11

 1   infringe.  So it's just not feasible to say that we should

 2   be able to get all these and make all these determinations

 3   on our own.

 4        The second factor is the theory of infringement, which

 5   we believe we've done a very detailed job in our --

 6   particularly our updated infringement contentions.  There

 7   are more than 150 pages of claim charts.  And so I -- I

 8   don't feel like there's any need to go into that further at

 9   the moment.

10        The third factor is whether we're seeking stuff that's

11   reasonably similar, and certainly it has been our full

12   intent that what we are seeking is reasonably similar.  That

13   was the idea behind the definition and tying it to claim

14   elements, so that we -- we don't have any interest in

15   getting information about stuff that's not going to be

16   relevant to this lawsuit, so I don't think there should be

17   any real dispute about that.

18        Then the final factor is whether we diligently sought

19   the information from the Defendants or -- and certainly,

20   we've been trying to get it.  We -- we have asked them

21   multiple times.  And as in the Honeywell case where it was

22   found that under similar facts, we've made sufficient

23   efforts to give them notice of our theories and what we're

24   after, and certainly we've come to the Court at a fairly

25   early stage in the discovery process.

12

1    So even if the four-part test applies, we feel like
2  we've met it.  The Defendants have refused at every turn and
3  on multiple different contexts to provide this properly
4  requested information, and we're seeking the Court's
5  assistance to strike down Objection No. 12 and order that
6  the Defendants immediately provide all the requested
7  discovery for the full scope of products and systems that we
8  set forth in our definition, a definition that we feel
9  essentially just puts to words the scope of Defendants'
10 inherent discovery obligations that they should be providing
11 even without being asked.
12    So that's what I have for the moment, Your Honor.
13 Obviously, I'll wait to hear what the other side has to say.
14 Thank you.
15        THE COURT:  Okay.  Thank you.  Response?
16        MR. REITER:  Yes.  Good afternoon, Your Honor.  This
17 is Mark Reiter for the Defendants.
18    So to begin with, I -- with respect to my colleague on
19 the other side, I disagree with almost, I think, everything
20 that he said.
21    First of all, the law in this district, as Your Honor
22 is well aware, does not have a bright line rule as Plaintiff
23 is trying to say for discovery related to products that are
24 not identified in the infringement contentions, and that's
25 what we're talking about here is Plaintiff is asking, and we

13

1   believe literally is going on a fishing expedition, for any

2   products that might infringe.

3        You heard Mr. Parker say that they were just seeking

4   information about relevant systems, and that's very, very

5   broad.  And he talked about and said systems that may embody

6   the asserted claims.  That, again, is very, very broad.

7        What happened in epicRealm -- and I know Your Honor is

8   aware of this because in the Imperium decision that you

9   issued some years ago, I think 2012, you went through these

10  factors and you recognized what Judge Folsom said.

11       Judge Folsom said that the Court finds there is no

12  bright line rule that discovery can be obtained if related

13  to an accused product identified in the parties'

14  infringement contentions.

15       What Plaintiffs are trying to do here is set a bright

16  line rule that as long as it's reasonably similar or we say

17  all we want are things that are reasonably similar, we get

18  it.  But that's not what Judge Folsom said either.  Judge

19  Folsom said in epicRealm, the Court concludes that the scope

20  of discovery may, may include products and services that are

21  reasonably similar to those accused in the infringement

22  contentions.

23       And since Judge Folsom's decision, courts in this

24  district, including yourself, have applied what that may

25  factor is by putting together a four-factor test.  It's not

14

1    that it may or may not apply that four-factor test, as Mr.

2    Parker said.  It's quite clear that that four-factor test is

3    the test, consistent with what Judge Folsom said in whether

4    a party, a plaintiff may additionally get discovery into

5    products that are not identified in the contentions.

6         And those factors, Mr. Parker -- I do agree with him as

7    to what those factors are.  Is the information publicly

8    available?  Has Plaintiff identified a cognizable

9    infringement theory?  Are the products that are -- that

10   discovery is being sought for reasonably similar in theory

11   to the products for which a theory has been stated?  And was

12   the Plaintiff diligent?

13        Here Wapp has satisfied none of those factors.  You

14   haven't seen a shred of evidence, there's no declaration, no

15   evidence at all from Wapp as to the efforts it went to to

16   try and demonstrate what information is available or not,

17   what its theories are.

18        And with respect to its theories, we do take issue that

19   Wapp has properly identified theories.  We filed on

20   December 23rd -- we had a very brief telephone conversation

21   with Your Honor about this back in December.  We filed a

22   motion to strike their contentions because they identified

23   no cognizable, no understandable theory.  So we take issue

24   with whether they've done that.

25        There is no evidence here, even assuming they have

1    identified a theory, that the products for which they seek

2    discovery operate in a way similar to those for which they

3    charted, the third factor.

4         And four, there has been no diligence here.

5         And let me turn back to the point that Mr. Parker said

6    about the scope of their definition.  Your Honor held in the

7    Imperium case, or recognized, I should say, in the Imperium

8    case that in the Honeywell case decided by Judge Love

9    following these four factors, the Court held that the

10   Plaintiff was, quote, not entitled to discovery of all of

11   Defendants' LCD products -- those were the products that

12   were accused there -- merely because the patent-in-suit

13   relates to LCD systems.

14        What Wapp has said by talking about may embody the

15   claims, relevant systems, is they are seeking discovery of

16   anything that might relate to the technology that's claimed

17   in the three asserted patents, and that was explicitly

18   denied in Honeywell, and Your Honor recognized that.

19        So with respect to publicly available information,

20   despite the fact that we believe that their contentions,

21   even as supplemented, are deficient, Plaintiff was

22   nonetheless able to find publicly available information

23   about the products that they did chart.  They were able to

24   use that.  They didn't need to have and they didn't rely on

25   operational or working versions, whether test or otherwise,

16

1    of the products to prepare the charts that they did prepare,

2    to identify the products that they did identify and chart.

3    They don't meet that here.

4        But putting that aside, there's reams of information

5    about all of the products that are sold by Micro Focus.  We

6    have a declaration that we're ready to submit to Your Honor

7    that's almost 40 pages long from Mr. Roboostoff, who is

8    Micro Focus's functional and performance portfolio director,

9    that explains page after page and picture after picture of

10   information that is available about the accused products --

11   not the accused products.  The products that were sold by

12   the Defendants.

13       That includes manuals, not of just the current versions

14   of the products, but versions going back several years.

15   There are Help Centers where a party can put in any topic

16   about a product or potentially about a product and get help

17   and get information about that.

18       There are training videos.  Micro Focus has a YouTube

19   channel, their own YouTube channel that has dozens of videos

20   about how these products operate.  There are white papers.

21   There are many, many, many hundreds, if not thousands, of

22   pages on each product available.

23       Plaintiff has done nothing.  You have no declaration,

24   no explanation of anything that they have done to try and

25   find this information.  So they failed at the outset on the

17

1    first -- the first prong, whether or not the information was

2    publicly available or not.  Here the information was.

3         And as you found in Imperium, you denied the

4    Plaintiff's motion to compel because you said Plaintiff

5    must, as an initial matter, demonstrate that the information

6    it seeks is not publicly available and that it has not been

7    diligent in seeking such information.  You said the Court

8    finds that Plaintiff has failed to meet this threshold.

9    Plaintiff fails to identify any efforts it took to

10   investigate the non-accused products.  Moreover, there is no

11   evidence offered to demonstrate Plaintiff's use of the

12   publicly available information.

13        The same could not be more true here.  We have seen

14   nothing from the Plaintiff to identify any efforts it took

15   to investigate the non-accused products, and there's no

16   evidence that's offered by Wapp to demonstrate that it tried

17   or it used any of the publicly available information.  It

18   has done nothing.

19        With respect to the second factor, as I said, in the

20   Honeywell case, Judge Love found that a cognizable theory of

21   infringement had been identified.  The defendant in that

22   case said that they contested that and Judge Love said,

23   well, you didn't say anything soon enough.

24        We made our motion within three weeks of receiving

25   their supplemental contentions.  We filed that on

18

1    December 23rd.  We received their supplemental contentions,

2    I believe, on December 2nd or 3rd.

3        With respect to a showing of whether the products are

4    reasonably similar, again, this is the publicly available

5    information.  Nothing.

6        In Honeywell -- in Honeywell, what the Plaintiff did

7    there is element by element it explained why the products

8    that it had identified were expected to be reasonably

9    similar to those for which it sought discovery.  We have

10   nothing like that here.

11       Finally, with respect to diligence, given the reams of

12   information that is available -- and it is just volumes,

13   Your Honor.  As I said, manuals, Help Centers, YouTube

14   channels, white papers and so forth.  The Plaintiff has

15   shown nothing.  It hasn't even tried to download that

16   information.

17       We didn't hear Mr. Parker say that they had downloaded

18   some of the products that were available and it just wasn't

19   sufficient.  He just said it's not all there and these are

20   sophisticated products that you can't get at Best Buy.

21       Finally, Your Honor, with respect to the contentions,

22   again, we do believe that there has not been a showing.  We

23   disagree strenuously with what Mr. Parker said, that we do

24   not dispute that what they are seeking are reasonably

25   related.

19

1      We don't understand what their theories are.  We

2  haven't seen why or how they believe that these products for

3  which they are seeking discovery matter.  We don't

4  understand even what some of these products are.  And in

5  some of the definitions they identify something called AWS.

6  We don't know what that is.  Perhaps it's Amazon Web

7  Services, but this isn't -- we're not Amazon.  I don't know

8  what AWS is.  It's not a product of ours.  That's the only

9  acronym I know AWS is for.

10     So with all due respect, Your Honor, we believe that

11  their motion should be denied.  We believe they have failed

12  to show what they need to show, and they have failed to

13  comply with the rules of this district, which they have very

14  strenuously asked to partake in, having opposed our motion

15  to transfer, and we should move forward on the products that

16  they identified.

17     They had almost 18 months from the filing of the

18  complaint until things got sorted out before they did their

19  contentions.  They had plenty of time.  They did nothing.

20     Thank you, Your Honor.

21          THE COURT:  Thank you.  Any response, Mr. Parker?

22          MR. PARKER:  Yes, Your Honor, a few things.

23     First, as to the definition that was in our discovery

24  request and the -- maybe I should give you one or two

25  examples.  The definition says that we're looking for

20

1    products or systems that are capable of, for example,

2    simulating mobile networks from any geographic location

3    world-wide for mobile application testing; providing a

4    library of real world mobile and broadband network

5    conditions.  These are -- these are elements that are

6    essentially directly from the claims that are being asserted

7    in this action.

8        So it's not like we're simply asking for any

9    application that they have.  We -- we have tried to tailor

10   it to the issues that will be in this litigation.  And I

11   guess Mr. Reiter is now objecting to that definition, but

12   they had never previously stated that they had any problems

13   with the language of the definition, other than just the

14   generic it's over-broad, which was followed up by their

15   we're going to limit it to three specific things.  So I

16   think it's a little disingenuous to be now starting to argue

17   about that.

18       Secondly, I just -- counsel referred to your Imperium

19   decision several times and I -- I did want to point out in

20   the Imperium Holdings decision that that action involved

21   physical items that could be purchased and disassembled,

22   which is quite a different scenario than what we've got here

23   where we're dealing with highly complex software, much of

24   the underlying software and certainly the source code of

25   which is unavailable to Wapp.

1       Also, in that case the crux of the issue ended up being

2  was the other -- the discovery sought going to products that

3  were reasonably similar, and as I just discussed, I don't

4  believe that there was a debate before this phone call about

5  whether or not what we were seeking is stuff that's

6  reasonably similar.

7       So they were asking in Imperium Holdings about

8  discovery of any, you know, image sensors or image

9  processors, which is a fairly broad and generic term that

10  really doesn't tie to -- to asserted claims particularly,

11  which is not like the way that we did with our definition.

12       So -- and, finally, I guess I would note that in that

13  opinion, Your Honor at the conclusion of it specifically

14  said that, you know, despite the fact that you were denying

15  that motion to compel there, you pointed out that the

16  defendants were still under a continuous obligation to

17  produce discovery of any products that are, quote,

18  reasonably similar.

19       So that's all we're looking for here, and really, I

20  think there's something of a question of reasonableness

21  here, both in the effort and the substance.  The idea that

22  we can access -- you know, again, we asked the other side

23  would they -- would they confirm for us that what they are

24  alleging are free versions actually would be sufficient for

25  purposes of the issues of this case, that if we took some

1   free version, would we be able to, you know, to rely on the

2   fact that whatever it showed to us or didn't show to us was

3   sufficient for meeting the issues of this case, and they

4   have declined to give us that assurance.

5        And so -- and as far as we can tell, we did do a -- a

6   search a few days ago trying to figure out whether there

7   were free versions of the lists of products that we gave to

8   them that we thought were within the scope of our

9   definition, and I believe that well over half of them can't

10  be found.  Whether or not the ones that can be found are

11  sufficient or not, there's a whole bunch that aren't found.

12       So, really, this seems like an attempt by the

13  Defendants to -- to hide the ball on us in a scenario where

14  they should be able to readily provide us with the

15  information.  They should be readily able to provide us

16  with, for example, an operating version of a system that

17  we can analyze.

18       And just today they actually said they would give us

19  operable versions of the three systems that they have agreed

20  they would produce, and there's just no particular reason

21  why they shouldn't be able to do it similarly for these

22  other products.

23       I think I will stop now, unless Your Honor has

24  questions.

25            MR. REITER:  Your Honor, if I could just respond

1    briefly.   This is Mark Reiter again.

2              THE COURT:  Yes, go ahead.

3              MR. REITER:  I think there's a more fundamental

4    question here, Your Honor, than whether there are working

5    versions available or not.  The more fundamental question is,

6    did the Plaintiff comply with its obligation under the Local

7    Patent Rules and identify the products that it should have

8    identified in its contentions.  They didn't.  That is the

9    fundamental question here.

10        It is their -- it is reams of publicly available

11   information about the products.  They didn't have the

12   working versions of the products they charted.  They were

13   able to, nonetheless, chart them, we think deficiently, but

14   they, nonetheless, identified them sufficiently such that

15   we're not challenging whether those products are reasonably

16   in the case.

17        The problem here is they didn't do their homework.

18   They didn't do their work.  Now they're trying to shift the

19   burden to us to try to figure things out.

20        You heard Mr. Parker again say we tried in our

21   definition to summarize the claim elements.  Well, that,

22   again, is violative of what Judge Love said and you

23   recognized -- what Judge Love said in Honeywell and what you

24   recognized in Imperium that Plaintiff is not entitled to

25   discovery of all things that might be relevant to the

24

1    patent.  That's what they're trying to do here.  It is not

2    our burden to do that.  Particularly, again, when there is

3    so much information.

4         And you didn't hear -- other than the statement that a

5    couple of days ago or a few days ago they tried to download

6    a product or two, you didn't hear anything about any

7    searching on the Micro Focus website.  You didn't hear

8    anything about information that was lacking for the purposes

9    of being able, in the first instance, in the infringement

10   contentions to identify these products.

11        What was lacking from the manual?  What was lacking

12   from the Help Center?  What was lacking from the YouTube

13   training videos, from the white papers?  You didn't hear any

14   statement that they ever tried to look for that information,

15   and now they're trying to shift the burden to us and say

16   just give us everything.  You guys go figure it out and give

17   us everything.  We haven't shown that it's not publicly

18   available.  We haven't shown you anything that we've done.

19        In fact, Your Honor, in early December we made the

20   source code available pursuant to Rule 3-1(g) for the

21   products that they identified.  To this day -- and I

22   understand that today things are a little bit different in

23   the world.  But to this day, there has been no effort on the

24   part of Plaintiffs to go inspect that source code, no effort

25   at all, none.

1    So they have not done what they need to do, and they're

2  now trying to put the burden back on us, despite the fact

3  that they didn't chart them, despite the fact that they

4  didn't identify these products, despite the fact that

5  they're going on a fishing expedition.  They haven't

6  identified a theory.  They haven't identified how these

7  products might be relevant for the theory they allege they

8  have identified, and they haven't been diligent.

9    And with respect to that last sentence in Imperium,

10  what I believe that goes to -- and I certainly don't want to

11  be interpreting your language to you.  But what I believe

12  that sentence went to was in a part of the case the parties

13  agreed that certain products were reasonably similar and the

14  defendant was producing that, and my understanding of that

15  last sentence was with respect to the products for which

16  there was no dispute over reasonable similarity, the

17  defendant had an ongoing obligation.  But with respect to

18  the products that were at issue in the motion where

19  plaintiff had not shown that it had been diligent, where

20  plaintiff had not shown that there was a lack of publicly

21  available information, that sentence didn't apply.

22    And I'm happy to answer any questions, Your Honor.

23      THE COURT:  Okay.  Thank you.  Anything else?

24      MR. PARKER:  Your Honor, just one point or a

25  combination point.

26

1      Counsel for Defendant seems to be trying to say that we

2   are not entitled to anything unless we have put it into

3   infringement contentions, and the case law is very clear

4   that we're not strictly limited to that, that there are

5   other things that are appropriately discoverable.

6      And, indeed, I think it's Defendants that are trying to

7   shift the burden here.  We gave them, during the meet and

8   confer process, a very specific list of products that we

9   thought met -- fell within our definition, and they haven't

10   denied that those products fall within our definition.

11   They're just saying we're not going to do anything for you.

12      And so the notion of shifting the burden to them, we

13   have -- we have given them a list.  So I -- those

14   products --

15          MR. REITER:  Your Honor, again, Mark Reiter.  If they

16   were able to identify those products, why didn't they chart the

17   products?  Why didn't they put them in their contentions?  They

18   didn't.  And now to come in and try and fill in the gap without

19   satisfying the requirements that were laid out in Imperium and

20   in Honeywell.

21      And Judge Folsom certainly did not, as I've already

22   said and as you recognized, there was no -- no bottom line

23   rule that they get this discovery.  They may, if they show

24   and satisfy the elements.

25      As I said, Your Honor, and I'll offer this to the Court

27

1    if it would be helpful, we have that declaration ready to go

2    to demonstrate the public -- just the volume of publicly

3    available information and a short five page response to what

4    it is that they filed.  It's just five pages, along with

5    that declaration, Your Honor.

6              THE COURT:  Okay.  Thank you.  And let me tell you,

7    after hearing everyone's arguments, here's what I'm going to

8    do.  I have not studied the actual motion to compel.  We just

9    kind of denied it summarily, and my clerks do that kind of

10   routinely.  So because there was not a response, I did not

11   examine it.  After hearing the arguments, I now want to read

12   it, so I will give the defense the opportunity to file a

13   response and then -- and it can be a normal response.  I'm not

14   limiting you to -- the limits are only under the Local Rules.

15   The question is, can you do that in like seven days?

16             MR. REITER:  I -- I can do that today, Your Honor.

17             THE COURT:  Okay.  And then the Plaintiff, if you

18   want to file a reply, you can do that within seven days, as

19   soon as they file their response.  And then I'll take care of

20   it pretty quickly.

21       I just want to read it, and it's not fair for me to

22   read this without giving them a chance to respond to what's

23   written.  I just can't make a decision -- I need to study

24   it.  I just can't make a decision based on what you said.

25   But I will resolve it pretty quickly.

1      Okay.  Anything else I can do for the Plaintiff today?

2           MR. PARKER:  No, Your Honor.

3           THE COURT:  Anything from defense in addition?

4           MR. REITER:  No, Your Honor.  Thank you.

5           THE COURT:  Okay.  They said they would file that

6      today.  Again, is seven days -- let me just ask, is the

7      Plaintiff going to file a reply?

8           MR. PARKER:  Your Honor, I think we definitely will,

9      and actually that does raise a point.  The other -- the

10     Defendants' opening claim construction brief is due today, and

11     so our reply to that is also due seven days from now.  So

12     either -- I would appreciate to either hold off on filing their

13     opposition to this motion to compel for a couple of days or

14     that we be given at least a couple of days more than seven so

15     that we don't have both of those due on the same day.

16          THE COURT:  So, Mr. Reiter, why don't you -- I was

17     going to give you seven days to file the response.  Do you want

18     to go ahead and take them up on that and then -- just to

19     stretch it out so that all those things aren't due at the same

20     time?

21          MR. REITER:  Sure, sure.  I appreciate it, Your

22     Honor.  We'll file -- it may be sooner than seven days but --

23          THE COURT:  No, that's fine.

24          MR. REITER:  But we won't file it today so that Mr.

25     Parker can get his claim construction reply brief done.

29

1          THE COURT:  Okay.  So, Mr. Parker, once they file it,

2   you have seven days to file the reply and I think that should

3   solve the problem.

4          MR. PARKER:  Sure.  Thank you, Your Honor.

5          THE COURT:  Okay.  Y'all have a great day and stay

6   safe.  Thank you.

7          MR. REITER:  Thank you, Your Honor.

8          MR. PARKER:  Thank you, Your Honor.

9

10

11

12

13

14

15

16

17

18

19   I certify that the foregoing is a correct transcript from

20   the record of proceedings in the above-entitled matter.

21

22   _____          _____

23   Jan Mason                         Date

24

25