**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

WAPP TECH LIMITED PARTNERSHIP AND WAPP TECH CORP.,

Plaintiffs,

v.

BANK OF AMERICA, N.A.,

Defendant.

Case No. 4:18-cv-00519-ALM

**JURY TRIAL DEMANDED**

**MOTION TO STRIKE "SECOND UPDATED … INFRINGEMENT CONTENTIONS …"**

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ADDITIONAL BACKGROUND .......... 2

A. Plaintiffs' successive sets of contentions (and counsel). .......... 2

1. Asserted claims .......... 3

2. Charts .......... 4

3. Accused instrumentalities .......... 5

III. ARGUMENT .......... 6

A. Plaintiffs' newest counsel could not have conduct "an inquiry that is reasonable" before signing and serving plaintiffs' massive 2020 contentions. .......... 6

B. Plaintiffs required leave for the 2020 contentions—which they did not even bother to seek, let alone obtain. .......... 7

1. The 2020 contentions are not authorized by P.R. 3-6(a)(1). .......... 7

2. The 2020 contentions are not authorized by P.R. 3-1(g). .......... 7

a. The additions made by the 2020 contentions are far more expansive than citations to source code, which is all that P.R. 3-1(g) authorizes. .......... 8

b. The time to supplement with source code citations under P.R. 3-1(g) expired long ago. .......... 9

C. Plaintiffs have not specifically identified the accused instrumentalities or where each element is found in each instrumentality. .......... 10

1. The contentions do not specify accused combinations. .......... 10

2. The contentions include impermissible placeholder references. .......... 11

3. The combination claim charts are noncompliant. .......... 12

D. Plaintiffs still have not disclosed their priority date contentions. .......... 13

IV. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

## Cases

*Cellular Communications Equipment, LLC v. Apple Inc.*,
No. 6:14-CV-251, 2016 WL 4211707 (E.D. Tex. Aug. 10, 2016) ........................................... 8

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
No. 18-CV-02621-WHO, 2019 WL 955000 (N.D. Cal. Feb. 27, 2019) ................................ 10

*Finjan, Inc. v. Proofpoint, Inc.*,
No. 13-CV-05808-HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015).................................. 12

*Finjan, Inc. v. Sonicwall, Inc.*,
No. 17-cv-04467-BLF (VKD), 2019 U.S. Dist. LEXIS 79694
(N.D. Cal. May 1, 2019) ......................................................................................... 10, 11

*O2 Micro International Ltd. v. Monolithic Power Systems*,
467 F.3d 1335 (Fed. Cir. 2006)........................................................................................ 10

## Rules

Patent Rule 2-3 ..................................................................................................... 1, 6, 7

Patent Rule 3-1 ..................................................................................................... *passim*

Patent Rule 3-6 ..................................................................................................... 6, 7, 13

## I. INTRODUCTION

Plaintiffs' fourth set of lawyers, led by Feinberg Day's Robert Kramer, began making appearances last Friday, October 16. (Dkt. 225.) By the following Monday, October 19, they had prepared a "Second Updated Disclosure of Infringement Contentions …," which they signed and served on Wednesday, October 21. In between, on Tuesday, Micro Focus defendants' counsel sent a detailed letter trying to warn them off—to no avail.

Plaintiffs' "second updated" infringement contentions are grossly defective and should be stricken:

- First, Mr. Kramer could not possibly, over a weekend, have conducted "an inquiry that is reasonable" into the completeness and correctness of 500+ pages of contentions, including 400+ pages of new material, as he certified under P.R. 2-3.
- Second, this "update" was served without leave of Court or other authorization.
- Third, the contentions do not identify accused instrumentalities "as specific[ally] as possible," *see* P.R. 3-1(b), nor do they specify "where each element of each asserted claim is found within each Accused Instrumentality," *see* P.R. 3-1(c)—but instead use improper "combination charts" that leave defendant (and eventually the Court) to guess which of 63+ possible combinations of products are accused, and how they are alleged to infringe.
- Fourth, the contentions do not state "the priority date to which each asserted claim allegedly is entitled." *See* P.R. 3-1(e).

Defendants warned plaintiffs about each of those defects, before the "second updated contentions" were signed and served, but plaintiffs forged ahead without correcting anything. Plaintiffs' knowing disregard for the rules, coupled with prejudice to defendant, warrants striking

the contentions—whatever impact that might have on plaintiffs' claims, more broadly.

## II. ADDITIONAL BACKGROUND

### A. Plaintiffs' successive sets of contentions (and counsel).

Plaintiffs commenced this action on July 20, 2018. (Dkt. 1.)

Then they changed counsel in September 2019. (Dkts. 18 and 19.)

A scheduling order was entered under which plaintiffs were to provide infringement contentions no later than November 7, 2019. (Dkt. 29.) After serving contentions on November 7, as required, plaintiffs then served "updated contentions." Although the updated contentions are dated November 22, 2019, they were not served until December 2 and they were not authorized until December 20. (Dkt. 40.) The parties have been litigating under those updated contentions ("2019 contentions") ever since. The 2019 contentions include a captioned cover document, which is reproduced in exhibit A to the accompanying Shelton declaration, and six numbered exhibits with claim charts.[1]

Plaintiffs changed counsel again in June 2020. (Dkt. 94.) The Court accommodated incoming counsel by continuing the deadline for their opening expert reports from June 22 to September 3. (Dkt. 113.) Then two months later, on August 21, as reported in an unnumbered minute entry, the Court granted their request to further continue the opening report deadline, this time to November 2.

[1] Exhibits to the accompanying Declaration of Barry K. Shelton are "numbered" with letters to avoid confusion with the exhibits to plaintiffs' contentions, which are numbered 1–6. Because those numbered exhibits are voluminous, and some contain sensitive information, they are not submitted in their entireties. But exhibit A to the Shelton declaration does include, for each of the six charting exhibits to the 2019 contentions, the slip sheet and the first page—in addition to the complete captioned cover document for those charts.

Plaintiffs changed counsel yet again on Friday, October 16, 2020, (Dkt. 121)—about two weeks from the November 2 deadline for opening expert reports. Defendants agreed to this third substitution based on plaintiffs' disavowal of further delay. (*See* Dkt. 121 at 3 ["In not opposing, defendants are relying on plaintiffs' representation that 'withdrawal and substitution … is not sought for purposes of delay.' Defendants will resist any effort to continue any trial or pretrial dates, in order to accommodate the substitution."].)

The next business day, Monday, October 19—two weeks before the expert report deadline—plaintiffs tried serving "second updated contentions" ("2020 contentions"); two days later—October 21, ten months after serving their 2019 contentions—plaintiffs succeeded.[2] In between—on Tuesday, October 20—Micro Focus counsel sent the letter reproduced as exhibit C to the Shelton declaration. This motion targets those 2020 contentions.

Like the 2019 contentions, the 2020 contentions include a captioned cover document, which is reproduced as Exhibit B to the Shelton declaration. As with exhibit A, exhibit B also includes, for each of the six charting exhibits, the slip sheet and the first page.

**1. Asserted claims**

Plaintiffs assert three patents: U.S. Patent Nos. 9,971,678, 9,298,864 and 8,924,192. Its 2019 contentions assert claims 1–50 of the '678 patent, claims 1–41 of the '864 patent, and claims 1–16 and 60–69 of the '192 patent, (Shelton decl. exh. A at 2-3)—**117 claims**, altogether. Its 2020 contentions assert only claims 26, 45 and 47–49 of the '678 patent, claims 1–3, 8 and 20 of the '864 patent, and claims 1–3 of the '192 patent (*Id.*, exh. B at 3)—just **13 claims**,

[2] Plaintiffs tried to serve their 2020 contentions on Monday, October 19 by emailing—before midnight Pacific Time but well after midnight Central (forum) Time—a non-functioning link to the contentions. A little after midnight Pacific Time (i.e., on October 20), they sent another link—but the document and certificate of service were unsigned. Not until October 21 did they sign and serve their 2020 contentions. (*See* Shelton decl. ¶¶ 5–7)

altogether.

**2. Charts**

In both the 2019 and 2020 contentions, exhibits 1–3 chart the asserted patents against named Micro Focus products—while exhibits 4–6, by contrast, are directed to unidentified "Additional Accused Systems."

In their 2019 contentions, plaintiffs make a related distinction between their asserted claims. Specifically, 93 of the 117 asserted claims are charted only in exhibits 4–6, against "Additional Accused Systems" and not against any named products.[3] That left 24 claims charted in exhibits 1–3 against named products. The 2020 contentions make no such distinction: those contentions chart the same set of 13 claims against both named Micro Focus products, in exhibits 1–3, and against "Additional Accused Systems," in exhibits 4–6.

Even though exhibits 1–3 to the 2020 contentions chart only about half as many claims (13 claims) as the corresponding exhibits in the 2019 contentions (24 claims), the charts nearly quadrupled in length—from 158 pages in the 2019 contentions to 565 pages in the 2020 contentions. (Shelton decl. ¶¶ 2, 7.) Of the 400+-page increase, only 45 pages—barely more than 10%—are accounted for by "source code discussions" based on source code that Micro Focus produced after the 2019 contentions were served. (*Id.*, ¶ 12.)

In the 2019 contentions, each of the placeholder charts in exhibits 4–6 begins:

[3] The claims charted only against unnamed placeholders are claims 4–25, 27–36, and 38–44 of the '678 patent, claims 4–7, 13–19, 21–28, and 30–41 of the '864 patent, and claims 4–16 and 60–69 of the '192 patent. (*See* Shelton decl. exh. A at 5.)

> On information and belief and as further discussed in the cover pleading, Micro Focus has developed additional mobile testing products beyond the Micro Focus-related Accused Systems that are believed to be infringing that may involve integration with third party device farms ("Additional Accused Systems"). As these are software products whose functionality cannot be discerned from publicly available sources, Wapp has served discovery on Micro Focus seeking additional information and will supplement these charts once such discovery has been produced.

(Shelton decl. exh. A.) Or, more succinctly:

> On information and belief … Micro Focus has developed additional mobile testing products … that are believed to be infringing … Wapp has served discovery on Micro Focus seeking additional information and will supplement these charts once such discovery has been produced.

In the 2020 contentions, those charts begin:

> On information and belief and as further discussed in the cover pleading, Micro Focus has developed additional mobile testing products beyond the Micro Focus-related Accused Systems that are believed to be infringing that may involve integration with third party device farms ("Additional Accused Systems"). As these products' functionality cannot be discerned from publicly available sources, Wapp has served discovery on Micro Focus seeking additional information and will supplement these charts once such discovery has been produced.

(*Id.*, exh. B.) The only difference is that the last sentence in the 2019 contentions begins with the excuse, "these are *software products* whose functionality cannot be discerned from publicly available sources," while the last sentence of the 2020 contentions removes the reference to "software" to more generically allege, "these products' functionality cannot be discerned from publicly available sources."

**3. Accused instrumentalities**

The 2019 contentions name five products: LoadRunner n/k/a LoadRunner Professional, Performance Center n/k/a LoadRunner Enterprise, Network Virtualization, and "optionally" StormRunner n/k/a LoadRunner Cloud and Mobile Center n/k/a UFT Mobile. (Shelton decl. exh. A at 2.) The 2020 contentions identify the same five products, plus Sprinter and "UFT (Unified Functional Testing) products," (*Id.*, exh. B at 2)—but they do not identify the "UFT … products" by name. Like the 2019 contentions, the 2020 contentions hedge with the explanation that "the

named products are integrated with each other" in unspecified ways and therefore "act as a system and are used as an integrated whole." (*Id.* at 3.) Thus "the Accused Systems include any combination of the products." (*Id.*)

The six products named in the 2020 contentions—to say nothing of the otherwise unspecified additional "UFT (Unified Functional Testing) products"—could be formed into 63 combinations. The captioned cover document for the 2020 contentions does not say which of those combinations are "Accused Systems." Instead it promises that the "Accused Systems are identified in Exhibits 1–6." (*Id.*, exh. B at 3.) But Bank of America has found no such identification buried in those voluminous exhibits.

## III. ARGUMENT

Plaintiffs' 2020 contentions should be stricken for several reasons, including: (1) noncompliance with the certification requirement, *see* P.R. 2-3; (2) failure to obtain leave, *see* P.R. 3-6(b); (3) failure to identify accused instrumentalities "as specific[ally] as possible," *see* P.R. 3-1(b), or "specifically [identify] where each element of each asserted claim is found within each Accused Instrumentality," *see* P.R. 3-1(c); and (4) failure to specify "the priority date to which each asserted claim allegedly is entitled," *see* P.R. 3-1(e).

### A. Plaintiffs' newest counsel could not have conduct "an inquiry that is reasonable" before signing and serving plaintiffs' massive 2020 contentions.

The 2020 contentions are signed by Robert Kramer. (Shelton decl. exh. B at 6.) Mr. Kramer was not counsel of record until the afternoon of Friday, October 16. (Dkt. 225.) The 2020 contentions have a protective order designation that prevented Mr. Kramer from reviewing those contentions before he made his appearance. (*See* Dkt. 112, § (5)(a).)

Mr. Kramer's signature on the 2020 contentions "constitute[s] a certification that to the best of his … knowledge, information, and belief, *formed after an inquiry that is reasonable*

*under the circumstances*, the information contained [therein] is complete and correct at the time it is made." P.R. 2-3 (italics added). Plaintiffs first tried to serve their 2020 contentions—including 565 pages of charts against named products in exhibits 1–3, plus another 16 pages against unnamed placeholders in exhibits 4–6—on Monday, October 19, the business day after Mr. Kramer appeared. (Shelton decl. ¶ 5.) A single business day, or even a weekend, was not enough time for Mr. Kramer to conduct the reasonable inquiry required by P.R. 2-3.

**B. Plaintiffs required leave for the 2020 contentions—which they did not even bother to seek, let alone obtain.**

**1. The 2020 contentions are not authorized by P.R. 3-6(a)(1).**

"Amendment or supplementation of any Infringement Contentions …, other than as expressly permitted in P. R. 3-6(a), may be made only by order of the Court, which shall be entered only upon a showing of good cause." P.R. 3-6(b). Rule 3.6(a), in relevant part, allows infringement contentions to be amended "not later than 30 days after service by the Court of its Claim Construction Ruling." P.R. 3.6(a)(1). But the Court's Claim Construction Memorandum Opinion and Order was served on April 27, 2020, (Dkt. 81)—175 days before plaintiffs even tried to serve their 2020 contentions.

**2. The 2020 contentions are not authorized by P.R. 3-1(g).**

Plaintiffs might also try to claim authorization under P.R. 3-1(g), which in relevant part provides:

> After receipt of the source code for the Accused Instrumentality, the party [claiming patent infringement] is permitted 60 days to supplement [its] P.R. 3-1 disclosure to identify, with specificity, the source code of the Accused Instrumentality that allegedly satisfies the software claim elements. The party claiming patent infringement shall identify, on an element-by-element basis for each asserted claim, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements.

(Dkt. 29 at 5.) But reliance on P.R. 3-1(g) would be misplaced.

**a. The additions made by the 2020 contentions are far more expansive than citations to source code, which is all that P.R. 3-1(g) authorizes.**

First, as plaintiffs have acknowledged, the role of P.R. 3-1(g) is to allow plaintiffs "to amend their contentions to add source code citations." (*See* Dkt. 115 at 11.) Thus plaintiffs promised, months ago, that "any source code citations added to the infringement contentions would not change the overall theories of infringement previously provided." (*See id.* at 13 n. 2.)

That would be consistent with *Cellular Communications Equipment, LLC v. Apple Inc.*, No. 6:14-CV-251, 2016 WL 4211707 (E.D. Tex. Aug. 10, 2016), one of the authorities on which plaintiffs have relied, (*see* Dkt. 115 at 9 & exh. L to Dkt. 115). In that case, a plaintiff tried to add "two types of supplementation" to its contentions: "(1) … citations to source code" and "(2) additional language … not present in prior disclosures." *Id.* at *2. The additional language consisted of a *single sentence* added to the charts for two claims. *Id.* The source code citations were allowed but the additional sentence was not. *Id.* at *4.

But here, plaintiffs have added more than *400 pages* to their charts. (Shelton decl. ¶ 7.) Of those 400+ new pages, only 45 include any "source code discussion." (*Id.*, ¶ 12.) The rest has nothing to do with source code but instead is based on other material—which plaintiffs had in hand long before they served their new contentions.[4] And even the "source code discussions" are far more extensive than the mere citations authorized by P.R. 3-1(g). (*Id.*)

In addition to introducing new theories for existing infringement accusations, the 2020 contentions also make entirely new accusations. Specifically, the 2020 contentions accuse Micro

[4] Specifically, the other added material is based on: (1) 53 documents produced by plaintiffs, not Micro Focus; (2) 29 documents produced by Micro Focus—of which, 22 were produced on March 27, 2020, six were produced on May 7, 2020, and one was produced on May 26, 2020; and (3) two documents produced by Bank of America on May 7, 2020. (Shelton decl. ¶ 14.)

Focus's Sprinter product of infringing the asserted claims,[5] and they accuse Micro Focus's Mobile Center/UFT product of infringing more asserted claims than the 2019 contentions did.[6]

Because the 2020 contentions add far more than source code citations, they are not authorized by P.R. 3-1(g).

**b. The time to supplement with source code citations under P.R. 3-1(g) expired long ago.**

Moreover, the source code citations in the 2020 contentions are untimely. Micro Focus produced source code for all the products accused in the 2020 contentions, except Sprinter, in December 2019. (Dkt. 111-5.) It then produced Sprinter code on May 7, 2020. Those productions were made in Dallas. (Shelton decl. ¶ 13.) At plaintiffs' request, all that code was then produced again in Irvine, on July 7, 2020. (*Id.*, ¶ 13 & exh. D.)

Plaintiffs began their inspection on July 10 and although they asked for more code on July 16, their reviewers inspected the code that had been produced on 20 days between July 10 and August 17. (*Id.*, ¶ 15.) Then on August 18, Micro Focus produced the additional code that plaintiffs requested. (*Id.*, exh. E.) Plaintiffs inspected the enlarged codebase in 19 days between August 18 and October 22, (*Id.*, ¶ 15.), which is the day they signed and served their 2020 contentions.

The contentions cite 65 files. (*Id.*, ¶ 13.) Of those, 59 were in the December 2019 production, one was in the May 2020 Sprinter production, and the last five were in the August 18

---

[5] Exhibit 2 to the 2019 contentions includes a passing reference to Sprinter in the chart for claim 29 of the '864 patent, but that claim was dropped from the 2020 contentions. In the 2019 contentions, none of the still-asserted claims were charted against Sprinter. (Shelton decl. ¶ 3.)

[6] In the 2019 contentions, only claims 20 and 29 of the '864 patent are charted against Mobile Center/UFT. Claim 20 is still asserted but claim 29 is not. The 2020 contentions chart *all* the still-asserted claims against Mobile Center/UFT. (Shelton decl. ¶ 4.)

production. (*Id.*) Patent Rule 3-1(g) required plaintiffs to supplement their contentions with citations to those files within 60 days of production. Plaintiffs missed their chance by waiting until October 22, 2020.

### C. Plaintiffs have not specifically identified the accused instrumentalities or where each element is found in each instrumentality.

Infringement contentions must identify "each accused … instrumentality," "as specific[ally] as possible," "by name or model number, if known." P.R. 3-1(b). And they must also "specifically [identify] where each element of each asserted claim is found within each Accused Instrumentality." P.R. 3-1(c).

The Northern District of California has the same rule. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, 467 F.3d 1335, 1359 n. 4 (Fed. Cir. 2006) (quoting California court's rule).[7] That court's application of its rule is, therefore, instructive and persuasive authority.

#### 1. The contentions do not specify accused combinations.

In order to satisfy P.R. 3-1(b)'s specificity requirement, a patentee who "believes that … underlying instrumentalities infringe in combination … must specify the combination." *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2019 WL 955000, at *4 (N.D. Cal. Feb. 27, 2019); *see also Finjan, Inc. v. Sonicwall, Inc.*, No. 17-cv-04467-BLF (VKD), 2019 U.S. Dist. LEXIS 79694, at *8 (N.D. Cal. May 1, 2019) ("Finjan must specify whether a product … infringes alone or in combination. … [I]f Finjan contends that the … product infringes an asserted claim, both alone and in combination with some other product …, its infringement contentions should make that clear.").

---

[7] The California rule makes infringement contentions due after (rather than before) the initial case management conference, and it adds the word "preliminary" to their title. Otherwise the rules are identical.

Here, plaintiffs' 2020 contentions do not make clear which specific combinations of named products the plaintiffs accuse. Instead they say only that "the Accused Systems include any combination of the products" named. (Shelton decl. exh. B at 3.) Unless plaintiffs really meant to accuse each and every one of the 63 separate combinations that might be formed of the six (or more?) products named in the contentions—in which case their combination charts must be indefensible, as explained below—that is inadequate.

The contentions do claim "[t]he Accused Systems are identified in Exhibits 1–6." (Exh. B at 3.) But Bank of America has not found specific identifications of product combinations there, either. If, in fact, the exhibits do identify specific combinations then it should be a simple matter for the plaintiffs to copy and paste them from the exhibits into their opposition—just as they could, and should, have placed them into their contentions' captioned cover document. If they do not then that should be taken as conclusive proof that they cannot find the required identification of specific combinations in their exhibits, either.

**2. The contentions include impermissible placeholder references.**

The rule also prohibits "placeholder references to unspecified products." *See Finjan, Inc.*, 2019 U.S. Dist. LEXIS 79694, at *8 ("Finjan must amend its identification of accused instrumentalities to remove placeholder references to unspecified products"). The 2020 contentions violate that ban in at least two ways.

First, the contentions document refers to otherwise-unspecified "UFT (Unified Functional Testing) products." (Shelton decl. exh. B at 2.) The rule expressly requires accused products to be "identified by name, if known." P.R. 3-1(b). The names of Micro Focus's products are publicly available (on its website) and also known to plaintiffs through extensive discovery productions. If plaintiffs meant to accuse, in addition to the six products they have named, still

more "UFT (Unified Functional Testing) products" then they should have identified them by name.

Second, exhibits 4–6 are placeholders directed to "additional mobile testing products … that are believed to be infringing." (Shelton decl. exh. B.) That, too, is wholly inadequate.

**3. The combination claim charts are noncompliant.**

Finally, P.R. 3-1(c) requires "chart[s] identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." Under this rule, "[c]ombination claim charts (whereby the party asserting infringement describes how multiple products infringe the asserted patent(s) in a single chart)" are allowed *only if* "each accused product allegedly infringes in the same way." *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *3 (N.D. Cal. Apr. 2, 2015).

Candidly, plaintiffs' 2020 contentions are such a sprawling mess that it is difficult to determine whether they allege separate infringement analyses for separate combinations or not. For example, the first chart, for claim 26 of the '678 patent, runs to 107 pages. (Shelton decl. ¶ 8.) But this much is clear: the charts cannot possibly satisfy this requirement unless plaintiffs meant to accuse far fewer than the 63+ possible instrumentalities into which the six named products (not counting generic "UFT (Unified Functional Testing) products") can be combined. That is because the charts use screenshots for specific products; e.g., the first chart starts with a LoadRunner screenshot. (*Id.*, exh. B.) Combinations that do not include LoadRunner will not have that screen.

If plaintiffs meant to accuse fewer than every possible combination of the products named in the 2020 contentions then they have not complied with P.R. 3-1(b). If they meant to accuse all those combinations then their combination charts do not comply with P.R. 3-1(c).

Because plaintiffs—despite having had years to do it—still have not articulated compliant contentions, their contentions should be stricken.

**D. Plaintiffs still have not disclosed their priority date contentions.**

All the asserted patents claim priority to earlier patent applications. That triggers P.R. 3-1(e), which requires infringement contentions to state, "[f]or any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled."

The '678 patent claims priority, as a continuation, through the '192 patent and an intervening continuation to a utility patent application filed on June 9, 2006 and a provisional patent application filed on June 10, 2005. (Dkt. 1-1.) Based on that ancestry, plaintiffs could allege, for each asserted claim of the '678 and '192 patents, a priority date of either June 9, 2006 or June 10, 2005. But the 2020 contentions do not say which plaintiffs allege, for any of the asserted claims from those patents.

The ancestry of the '864 patent is even more complicated: it claims priority to a continuation *in part*, filed on February 15, 2010, of the June 9, 2006 utility-patent ancestor claimed by the '678 and '192 patents; and in addition to claiming the benefit of the same June 10, 2005 provisional as those other two patents, the '864 patent also claims the benefit of another provisional filed on February 16, 2009. (Dkt. 1-2.) That means for each asserted claim of the '864 patent, plaintiffs could allege any of four priority dates: June 10, 2005, based on the first provisional; June 9, 2006, based on the first utility patent; February 16, 2009, based on the second provisional; or February 15, 2010, based on the continuation-in-part utility patent. But the 2020 contentions do not say, for any of the '864 patent's asserted claims, which of those four possible priority dates the plaintiffs allege.

## IV. CONCLUSION

The 2020 contentions should be stricken for pervasive noncompliance with this Court's rules, including (1) P.R. 2-3's certification requirement, (2) P.R. 3-6(b)'s leave requirement, (3) the specificity requirements of P.R. 3-1(b) and 3-1(c), and (4) P.R. 3-1(e)'s requirement to disclose priority date allegations.

Dated: October 29, 2020

Respectfully submitted,

By: */s/ Barry K. Shelton*

Barry K. Shelton
Texas State Bar No. 24055029
Bradley D. Coburn
Texas State Bar No. 24036377
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, Texas 78734-4775
Telephone: (512) 263-2165
Facsimile: (512) 263-2166
bshelton@sheltoncoburn.com
coburn@sheltoncoburn.com

Melissa Smith
GILLAM & SMITH
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
melissa@gillamsmithlaw.com

*Attorneys for Defendant Bank of America, N.A.*

## CERTIFICATE OF CONFERENCE

On October 23 and again on October 28, 2020, counsel for Defendant conferred with counsel for Plaintiffs, who stated that Plaintiffs oppose the motion.

**CERTIFICATE OF SERVICE**

I certify that the foregoing document is being served via the Court's CM/ECF system on October 29, 2020 on all counsel of record who consent to electronic service per Local Rule CV-5(a)(3) or, otherwise, as required by local and federal rules.

/s/ *Barry K. Shelton*