**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP \|and WAPP TECH CORP., | |
| Plaintiffs, | C.A. No. 4:18-cv-00519-ALM |
| v. | JURY TRIAL DEMANDED |
| BANK OF AMERICA, N.A., | |
| Defendant. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION TO STRIKE SECOND UPDATED DISCLOSURE**
**OF INFRINGEMENT CONTENTIONS**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   DEFENDANTS' CONSISTENT PATTERN OF DELAY IN PROVIDING RELEVANT
DISCOVERY IS DIRECTLY RELEVANT TO THE TIMING OF WAPP'S UPDATED
CONTENTIONS.................................................................................................... 2

   A.    Defendants' Delay in Producing Source Code and Non-Source Code Discovery Relevant
   to the Infringement Contentions ................................................................. 2

   B.    Defendants' Prior Denied Motion to Enforce P.R. 3.1, Its Motion to Preclude Reliance on
   Source Code and Its Delay in Producing Source Code Discovery ............................. 4

III.  ARGUMENT ....................................................................................................... 6

   A.    Defendants' Allegation that Counsel Did Not Conduct a Reasonable Inquiry Is Meritless
   And Not Based on Any Facts................................................................... 6

   B.    Wapp Was Authorized to Serve Its Second Updated Contentions ................................... 7

      1.    The Court's July 2, 2020 Order Authorized Supplementation ....................................... 7

      2.    The Second Updated Contentions Were Properly Served Pursuant to P.R. 3-1(g) ........ 8

      3.    Defendants' Other Arguments Lack Merit ................................................................. 10

   C.    Defendants' Complaints Regarding the Substance of the Contentions Lack Merit ......... 12

   D.    Defendants Falsely Assert that the Second Updated Contentions Do Not Set Out Priority
   Date Contentions............................................................................... 13

   E.    Defendants Have Not Suffered Any Prejudice in Receiving the Second Updated
   Contentions, Nor Could They Given Their Own Delay in Producing Discovery ................... 13

IV.   THIRD UPDATED INFRINGEMENT CONTENTIONS................................................. 14

V.    CONCLUSION................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cellular Commc'ns Equip., LLC v. Apple Inc.*,
  No. 6:14-CV-251, 2016 WL 4211707 (E.D. Tex. Aug. 10, 2016) ........................................... 11

**RULES**

P.R. 3-1 ....................................................................................................................... 4, 8, 13

P.R. 3-1(g) .................................................................................................................... 8, 9, 10

Rule 3-1(g) ...................................................................................................................... 1, 2

## I.     INTRODUCTION

Defendants Seattle Spinco, Inc., EntIT Software, LLC, EntCO Interactive (Israel) Ltd., Entco Government Software, LLC, and Micro Focus (US) Inc. (collectively "Micro Focus"), Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), and Defendant Bank of America, N.A. ("Bank of America") filed nearly identical motions to strike the Second Updated Infringement Contentions of Plaintiffs Wapp Tech Limited Partnership and Wapp Tech Corp. (collectively, "Wapp").  All defendants are referred to collectively as "Defendants." As discussed below, Defendants' motions are without merit.

Bank of America is a customer of Micro Focus and utilizes Micro Focus' infringing software.  In the motion, Defendants completely ignore the history of their own discovery delays such as the failure of Micro Focus to produce 135 versions of source code for the accused products, including the first production of source for some accused products, before August 18, 2020.  Perhaps that is why they never once claim any prejudice or harm resulting from Wapp's service of its Second Updated Disclosure of Infringement Contentions ("Second Updated Contentions").  Instead, Bank of America spends its motion casting aspersions against Wapp's attorneys (*e.g.*, alleging no reasonable inquiry with no factual basis) and arguing alleged technical flaws (*e.g.*, no leave was sought to file them).

Wapp's Second Updated Contentions were served in accordance with the Court's July 2, 2020 Order which instructed Wapp to supplement its infringement contentions "after receiving the relevant source code," and Rule 3-1(g), which permits supplementation to add source code to infringement contentions following the production of source code.  ECF 109 at 4; ECF 29 at 5.  Consistent with the Court's July 2 Order and Rule 3-1(g), Wapp diligently reviewed the 135 versions of source code produced on August 18, 2020 and updated its contentions accordingly.

Defendants are not prejudiced by Wapp's Second Updated Contentions.  Fact discovery

does not close until December 8, 2020, more than seven weeks after the Second Updated

Contentions were served.  Similarly, Defendants' expert reports concerning infringement are not

due until December 22, 2020, more than two full months after its receipt of the Second Updated

Contentions.  Further, the date of the Second Updated Contentions was the direct result of Micro

Focus' decision to withhold relevant source code for the accused products until August 18, 2020.

However, for the purpose of resolving the parties' disputes regarding the Second Updated

Contentions, Wapp will meet and confer with opposing counsel and file a motion for leave to

serve its Third Updated Infringement Contentions ("Third Updated Contentions").  Because

Defendants complain about 63 combinations of accused products and alleged placeholders for

accused products, Wapp's Third Updated Infringement Contentions seek to resolve these

complaints by reducing the number of accused products and combinations to 8, which would

simplify the case and provide further clarity for Defendants.  Since Defendants complain that the

claim charts are not specific as to each combination, the Third Updated Contentions include

separate charts for specific products and combinations.

This Court should deny Bank of America's Motion to Strike and grant Wapp's motion for

leave to serve Wapp's Third Updated Infringement Contentions.

## II.   DEFENDANTS' CONSISTENT PATTERN OF DELAY IN PROVIDING RELEVANT DISCOVERY IS DIRECTLY RELEVANT TO THE TIMING OF WAPP'S UPDATED CONTENTIONS

The Defendants have consistently refused to provide timely discovery into infringement.

Because of the Defendants' refusal to provide relevant source code and other discovery, the

Court previously held that Wapp should supplement its contentions "under P.R. 3-1" once the

source code was finally produced.  ECF 109 at 4.  Wapp did exactly that.  Bank of America's

complaints are misplaced, and indeed it has neither asserted nor suffered any prejudice.

### A.   Defendants' Delay in Producing Source Code and Non-Source Code Discovery Relevant to the Infringement Contentions

Wapp served its Disclosure of Initial Infringement Contentions on November 7, 2019.  In order to resolve the parties' disagreement regarding Defendants' complaints about the Initial Infringement Contentions, Wapp served its Updated Disclosure of Initial Infringement Contentions ("First Updated Contentions") on December 2, 2019.  The Court granted Wapp's motion for leave to serve the First Updated Contentions on December 20, 2019.  ECF 40. Over the next three months, the Defendants improperly narrowed the scope of what they would produce to Wapp by unilaterally applying a restrictive definition of the "Accused Instrumentality" across all types of discovery including document production, interrogatories, and depositions.  Wapp ultimately filed a Motion to Compel Discovery on March 20, 2020 based on Defendants withholding properly-sought, relevant discovery from its interrogatory responses, Mandatory Disclosures, and document and source code production.  ECF 62.  The Court granted the motion to compel in its entirety on April 23, 2020.  ECF 80.

Before the April 23 Order, Micro Focus had produced fewer than 7,100 pages of documents, Wells Fargo had produced less than twenty pages, and Bank of America had not produced a single page.  After the Order, Micro Focus produced more than 162,000 additional pages of documents in at least ten productions, Bank of America produced approximately 35,000 pages of documents and Wells Fargo produced approximately 41,000 documents.  However, the Defendants have continued to delay and hide relevant discovery.  For example, Exhibit 1, which was produced on October 22, 2020, shows how Micro Focus and Bank of America use UFT and Network Virtualization in an infringing manner.  Despite the fact that Wapp has been continually requesting information from Defendants as to the use of the accused Micro Focus products by customers such as Bank of America and Wells Fargo, the Defendants continually refused to produce any such customer specific information.  Exs. 2 - 6.  Micro Focus improperly and deliberately waited to produce strong evidence of infringement such as Exhibit 1 until October

22, 2020 *after Wapp served its Second Updated Contentions* in an apparent effort to prevent

Wapp from using this evidence in its contentions.  Even worse, Bank of America never produced

this document at all.  Further, neither Wells Fargo nor Micro Focus has produced any such

documents regarding Wells Fargo's use of Micro Focus' accused software.  In light of this newly

produced evidence, Wapp is seeking leave to serve its Third Updated Contentions incorporating

the new evidence in Exhibit 1 as discussed in detail below.

Rule 3-1(g) contemplates that the Defendants produce source code "within 30 days of the

initial P.R. 3-1 disclosures," which would have been December 7, 2019.  However, Micro Focus'

original December 2019 source code production was woefully deficient.  Micro Focus then

delayed for another 8 months before producing the vast majority of its source code (*i.e.*, 135

versions for the accused products) on August 18, 2020.  Micro Focus made an additional

production on October 7.

### B.   Defendants' Prior Denied Motion to Enforce P.R. 3.1, Its Motion to Preclude Reliance on Source Code and Its Delay in Producing Source Code Discovery

After receiving Wapp's First Updated Contentions, Bank of America filed a "Motion to

Enforce P.R. 3.1" on December 23, 2019, alleging various deficiencies in those contentions.

ECF 42.  The Court denied this motion on July 2, 2020.  ECF 109.  Recognizing that Defendants

had not produced all the relevant source code prior to July 2, 2020, the Court explained:

> Here, Plaintiffs properly invoked P.R. 3-1(g) by stating in their Revised
> Contentions that each element was a software limitation. . . . Plaintiffs'
> infringement contentions therefore do not need to wholly comply with Rule 3-1 *at
> this time*.  *See* P.R. 3-1(g).  Rather, Plaintiffs must ensure compliance with Rule
> 3-1 *after receiving the relevant source code and amending their infringement
> contentions*.  The Court therefore denies Defendants' motion.

(*Id.* at 4; footnotes omitted; italics in original; bold/italics added).  In other words, the Court's

July 2, 2020 Order, which occurred after Micro Focus' December 2019 and May 2020 source

code productions, stated that Wapp should amend their contentions after receiving a reasonably

complete production of source code, which did not occur until at least August 18, 2020 when

Micro Focus finally produced 135 versions of source code for the accused products.  *Id*.

The very same day as this Court's Order denying Defendants' attempt to strike Wapp's

contentions (July 2), Bank of America tried another gambit—filing a Motion to Preclude

Reliance on Source Code, which was denied.  ECF 111; ECF 222 (Case No. 4:18-cv-469).  In

that motion, Defendants' alleged that it had made the source code available in December 2019.

(ECF 111, *see* at 2, 4.)  As detailed in Wapp's July 16 Opposition (ECF 115) and its July 30 Sur-

Reply (ECF 118), Wapp explained:

(a)     P.R. 3-1(g) did not require Wapp to conduct piecemeal source code review (ECF
         115 at 8);

(b)     the original December 2019 source code production was woefully deficient and
         ineffective to trigger the timing provisions of P.R. 3-1(g) (*id.* at 5-6);

(c)     only when constantly pushed by Wapp did Micro Focus begin producing source
         code, and then only over the course of many months following the original
         contentions (ECF  115 at 7-10; ECF 118 at 1-3); and

(d)     ***that source code production was still incomplete*** (ECF 115 at 7-10; ECF 118 at
         1-3).

The issue of source code production was discussed with the Court during a telephonic

conference on August 10.  During that conference, Wapp pointed out that, of 29 relevant

products that Micro Focus itself had identified in its interrogatory responses, Wapp had not

received ***any*** source code for 22 of the products.  (Ex. 7, 8/10/20 Tr. at 12.)  Defendants did not

deny this fact.

Eight days after the hearing, on August 18, 2020, Micro Focus finally produced 135

versions of source code for the accused products (*see* ECF 133-6), which was by far the largest

production of source code in the case.  Even later, Micro Focus provided an additional

production of source code on October 7.  Ex. 8.  The August production was crucial to Wapp's

understanding of the accused software.  For example, August 18 was the *first* production of

5

source code for the accused Performance Center product, which became LoadRunner Enterprise. Prior to August, Defendants had not produced any source code for this product.  As a second example, because Micro Focus' earlier productions failed to properly identify the products in its earlier productions, it was not until Wapp could match version numbers and compare source code in the August 18 production (as shown in ECF 133-6) to folders labeled "ptaas" in the earlier productions that it became clear that the "ptaas" folders related to the accused Stormrunner and LoadRunner Cloud products.

Prior to the August production, the absence of relevant code for many products and components hindered Wapp's understanding of the source code and created misleading interpretations.  This would be analogous to Defendants providing 10 pieces of a 1000 piece jigsaw puzzle and expecting Wapp to see the entire picture.  It was only after the August 18 production that Wapp had all of the source code pieces to understand the systems as a whole.

## III.    ARGUMENT

### A.   Defendants' Allegation that Counsel Did Not Conduct a Reasonable Inquiry Is Meritless And Not Based on Any Facts

Defendants' leading argument that Wapp's counsel could not conduct a reasonable inquiry to support the Second Updated Contentions is attorney argument devoid of any facts regarding the actual inquiry by Mr. Kramer and his team at Feinberg Day, which includes several patent attorneys with electrical engineering and computer science degrees.  Kramer Decl., ¶ 3. Beginning in March 2020, the Feinberg Day team was in communication with Wapp and its prior counsel.  *Id*.  From March-May 2020, the Feinberg Day team analyzed the pleadings, patents-in-suit, non-confidential infringement contentions, and other public information regarding the accused products.  *Id*.  By the time that the Feinberg Day team made a notice of appearance in the case, the team had performed a thorough analysis and investigation of the patents and technologies at issue in the case.  *Id*. at ¶ 4.  Moreover, by the time Feinberg Day appeared,

6

Wapp's former counsel had already substantially completed the Second Updated Contentions. *Id*. at ¶ 5.   Immediately after appearing in the case, the Feinberg Day team (including four attorneys with technical degrees) worked with a source code expert who had reviewed the source code and Wapp's former counsel to fully understand and finalize the Second Updated Contentions, until they were served on October 19, 2020.  *Id*. at ¶ 6-8.  Wapp's counsel thus conducted a reasonable and proper inquiry regarding the Second Updated Contentions.

## B.   Wapp Was Authorized to Serve Its Second Updated Contentions

### 1.   The Court's July 2, 2020 Order Authorized Supplementation

The Court's July 2, 2020 Order provided authorization for Wapp to serve its Second Updated Contentions.  After receiving Wapp's First Updated Contentions, Bank of America filed a "Motion to Enforce P.R. 3.1" on December 23, 2019.  ECF 42.  Recognizing that Defendants had not produced all the relevant source code, the Court denied the motion on July 2, 2020.  ECF 109 at 4.  The Court held that Wapp must supplement its contentions to comply "with Rule 3-1 after receiving the relevant source code and amending their infringement contentions."  *Id*.

> Here, Plaintiffs properly invoked P.R. 3-1(g) by stating in their Revised Contentions that each element was a software limitation.  *See* (Dkt. #134, Exhibit 3). Plaintiffs' infringement contentions therefore do not need to wholly comply with Rule 3-1 *at this time*. *See* P.R. 3-1(g). Rather, ***Plaintiffs must ensure compliance with Rule 3-1 after receiving the relevant source code and amending their infringement contentions***.

(*Id.* at 4; italics in original, bold/italics added, footnote omitted.)

Wapp followed the Court's July 2, 2020 Order and provided its Second Updated Infringement Contentions after Micro Focus produced 135 versions of source code for the accused products on August 18, 2020, including code for products like Performance Center for the first time in the case.  ECF 133-6.  While Defendants argue that Wapp was required to seek leave to serve the Second Updated Contentions, this Court's instructions in its July 2 Order that "Plaintiffs must ensure compliance with Rule 3-1 after receiving the relevant source code and

amending their infringement contentions" (ECF 109 at 4) indicated that no further leave was necessary.  Consistent with the Court's Order and Micro Focus' late source code production on August 18, there was no need to seek further leave to serve the Second Updated Contentions.

### 2.     The Second Updated Contentions Were Properly Served Pursuant to P.R. 3-1(g)

P.R. 3-1(g) states that updated contentions can be provided within 60 days after source code is produced.  ECF 29 at 5.  It is undisputed that the vast majority of source code produced in this case was produced on August 18, 2020, which included the first production of code for certain accused products and a total of 135 versions of source code for the accused products.  ECF 133-6.  Because source code was produced on August 18, the deadline for updating contentions under Rule 3-1(g) was October 19 (as October 18 fell on a weekend), which is when Wapp first served the Second Updated Contentions on Defendants.  Given the vast amount of source code produced for the first time, Wapp was authorized to serve amended contentions pursuant to P.R. 3-1(g).[1]  This is consistent with the Court's July 2, 2020 Order regarding supplementation after the source code is produced.  ECF 109 at 4.

Defendants' argument that the time to supplement contentions with regard to source code had expired is contrary to P.R. 3-1(g), the Court's July 2, 2020 Order, and common sense.  The premise of Defendants' argument is that supplementation to add a specific source code file must be made within 60 days of the production of that *specific source code file*.  That is contrary to Rule 3-1(g), which states that supplementation is triggered by production of "the source code for the Accused Instrumentality" (*i.e.*, the full set of relevant source code) not the production of a few isolated files of source code.  ECF 29 at 5.

---

[1] Counsel for Defendants fully expected a supplement on October 19 per its October 14, 2020 letter.  Ex. 9 ("[T]he deadline to supplement based on the second tranche [of source code] will be this coming Monday, October 19.").

Defendants' attempt to trigger the 60 days from the relatively small and indisputably incomplete production of source code in December 2019 is improper and inconsistent with the language of Rule 3-1(g).  After December 2019, Micro Focus withheld producing a full set of source code for over 8 months until the issue was raised with the Court.  On August 10, 2020, the parties informed the Court that Micro Focus had failed to produce any source code for 22 of 29 products that Micro Focus identified in its own interrogatory responses. Ex. 7 at 12.  Not surprisingly, Micro Focus produced 135 versions of source code for the accused products eight days later on August 18, 2020.  ECF 133-6.  The 60 day period is triggered by the production of a substantially complete set of code for the accused products as set forth in P.R. 3-1(g), which could not have been earlier than October 19, 2020 following the August production.  Wapp served its Second Updated Contentions on October 19, 2020 albeit with technical difficulties.[2]

The Rule 3-1(g) period of 60 days for supplementation could not have been triggered any earlier than the August 18, 2020 production of 135 versions of source code for the accused products.  This massive production of source code was crucial to understanding Micro Focus' product ecosystem and the relationship between its products.  It was the first production of source code for numerous products, such as Performance Center, which became LoadRunner Enterprise.  Further, the production of more complete versions of all the accused source code products allowed Wapp the ability to trace accused functionalities through the full set source code and see how different pieces of code functioned in relation to each other.  Prior to the

---

[2] Defendants mention the technical errors in footnote 2.  ECF 133, 2n.2.  Wapp served its Second Updated Contentions at about 10p.m. Pacific time on October 19.  Kramer Decl., ¶ 8. Counsel was then alerted that there was a technical problem with the service link and immediately served the contentions again at 12:23a.m. Pacific time.  *Id* at ¶ 9 .  Because a signature was inadvertently left off the document and certificate of service, Wapp served identical contentions with signatures on October 21, 2020.  *Id* at ¶ 12.  There is no prejudice to any Defendant as a result of the delay in formal service as all Defendants had full access to the substance of the contentions as of 12:23a.m. Pacific time on October 20, 2020.

August production, Micro Focus had only produced a relatively small number of source code files, which showed only pieces of the source code for the relevant products.  This would be analogous to Micro Focus providing 10 pieces of 1000 piece jigsaw puzzle and expecting Wapp to see the entire picture.  Rather, it was only after the August 18 production that Wapp had all of the source code pieces to understand the different source code pieces and how they fit together to into different software products and how they interacted with each other.

Furthermore, Micro Focus produced source code on October 7, 2020, and still has yet to produce source code for the Network Capture and Network Catcher features of the accused products.  Therefore, Rule 3-1(g)'s 60 time period has not been properly triggered as of today because a complete set of relevant source code has not yet been produced in the case.

Defendants' argument is similarly contrary to the Court's July 2, 2020 Order.  The Court was well aware of Defendants' severely deficient production of source code in December 2019 when it issued its Order. That Order specifically required Wapp to supplement its infringement contentions pursuant to Rule 3-1(g) "after receiving the relevant source code and amending their infringement contentions" thereby recognizing that Micro Focus had still not produced the relevant source code under Rule 3-1(g).  ECF 109 at 4.  Defendants' argument also directly contradicts the Court's Order on this issue.

### 3.    Defendants' Other Arguments Lack Merit

Defendants make several other arguments that lack merit.  First, Micro Focus argues that it was improper for the Second Updated Contentions to cite documents other than source code produced after Wapp's First Updated Contentions.  ECF 133 at 8n.4.  However, Defendants' allegations are vague as they never identify any specific document that they object to in the contentions.  Moreover, Defendants' allegations lack merit.  Wapp was complying with what it understood this Court to direct in its July 2 Order when it stated that Wapp did not need to serve

wholly compliant contentions ***until Wapp served its updated contentions after receiving the***
***relevant source code.***  ECF 109 at 4.  After the source code was produced on August 18, 2020,
and Wapp had time to review it, Wapp updated its infringement contentions as required by the
Court's July 2, 2020 Order.  *Id*.

The documents that were cited became relevant in light of the production of 135 versions
of source code for the accused products on August 18, 2020.  As explained above, this large
production of source code was crucial to understanding how Bank of America uses Micro Focus'
software and product ecosystem and the relationship between the different software products.  It
was the first production of source code for numerous products such as Performance Center,
which became LoadRunner Enterprise, and, for the first time, allowed Wapp to see how different
pieces of code functioned in relation to each other.

The documents that are cited in the Second Updated Contentions help explain how the
source code operates and why the accused software products infringe.  Furthermore, these
documents became relevant based on understanding a more complete picture of the source code
as a result of the August production.  This distinguishes the present case from *Cellular*
*Commc'ns Equip., LLC v. Apple Inc.* where the new text that was stricken was not a citation to
documents and was not connected to the source code.  *Cellular Commc'ns Equip., LLC v. Apple*
*Inc.*, No. 6:14-CV-251, 2016 WL 4211707, *2-4 (E.D. Tex. Aug. 10, 2016).

Second, Micro Focus' argument that there are 400 new pages with only 45 pages of
source code discussion is misleading.  Most of this space is consumed by pictures showing the
user interface, which is generated by the software to provide a more fulsome and clear
explanation of how the limitations are met by the underlying source code.

Third, Defendants falsely argue that the 2020 contentions accuse new products of
infringement.  For example, Defendants argue that the 2019 Contentions accused the Mobile

Center/UFT product of infringing two claims of the '864 patent and all claims in the Second

Updated Contentions.  ECF 133, at 8-9.  This is demonstrably false.  Like the Second Updated

Contentions, the 2019 Contentions assert that the Micro Focus-related Accused Systems

including the Mobile Center/UFT product (*i.e.*, "Mobile Center") infringe all asserted claims of

all patents-in-suit.  ECF 133-2 at 2.

> These systems for testing ("Micro Focus-related Accused Systems") include. . . .
> Mobile Center. . . , Defendants through their making, using, selling, and/or offering
> to sell the Micro Focus-related Accused Systems have infringed and continue to
> infringe at least claims 1-3, 26, 37, and 45-50 of the '678 patent, claims 1-3, 8-12,
> 20, and 29 of the '864 patent, and claims 1-3 of the '192 patent.

ECF 133-2 at 2-3.  Therefore, Defendants' claim lacks merit.

### C.    Defendants' Complaints Regarding the Substance of the Contentions Lack Merit

Defendants argue that the Second Updated Contentions vaguely accuse 63 product

combinations of infringement.  However, Defendants never explain how they come up with 63

combinations.  Regardless, the Second Updated Contentions are clear as to the all of the accused

product combinations.  ECF 133-3 at 2-3.  In any event, there is nothing improper about accusing

numerous products of infringement.  This issue will be rendered moot by Wapp's Third Updated

Infringement Contentions, which reduce the accused product combinations to 8 to narrow and

streamline the case for trial as discussed below.

Contrary to Defendants' allegations, the claim charts specifically state where each

element is found in the accused combinations.  The length of the claim charts is the direct result

of the number of combinations and the evidence showing where each element is found in each

combination.  This is consistent with the requirements of P.R. 3-1.

Defendants further complain that Wapp's reference to UFT products is a placeholder.

ECF 133 at 11.  This is incorrect.  As Defendants are aware, UFT refers to Unified Functional

Testing ("UFT") products (versions 12.02 through 15.01), which are all accused of infringement.

Again, as with the number of combinations, this issue will be rendered moot by Wapp's Third

Updated Contentions which will provide separate charts showing infringement for specific

product combinations as discussed below.

**D.      Defendants Falsely Assert that the Second Updated Contentions Do Not Set Out Priority Date Contentions**

P.R. 3-1(e) requires the following information: "For any patent that claims priority to an

earlier application, the priority date to which each asserted claim allegedly is entitled." The

"priority date" required by Rule 3-1(e) thus relates to priority to earlier filed applications.  The

Second Updated Contentions state the priority chain of the patents to establish that the asserted

claims of each patent-in-suit are entitled to a priority date of June 10, 2005 based on United

States Application Ser. No. 60/689,101.  Wapp thus complied with P.R. 3-1(e) and provided the

date of the earliest application, June 10, 2005, to which the asserted claims of each patent have

priority.  Additionally, in the interest of full disclosure, Wapp also provides a conception date for

purposes of priority, May 26, 2004, that is unrelated to the filing of any application and thus not

required by P.R. 3-1(e).

**E.      Defendants Have Not Suffered Any Prejudice in Receiving the Second Updated Contentions, Nor Could They Given Their Own Delay in Producing Discovery**

Not once in their Motions do Defendants allege that they have suffered any specific

prejudice or harm from the recent service of Wapp's Second Updated Contentions.  The entirety

of their Motions is instead directed to manufacturing meritless arguments that those contentions

are somehow "non-compliant" or "inadequate," none of which are asserted to cause Defendants

prejudice.

Indeed, there is simply no basis for arguing prejudice.  Fact discovery does not close until

December 8, 2020, more than seven weeks after the Second Updated Contentions were served.

Defendants' expert reports concerning the infringement issues are not due until December 22,

2020, more than two full months after its receipt of the Second Updated Contentions.

Even if Defendants attempt to argue on Reply some form of harm, it is clear that ***any***

***possible prejudice is entirely of their own making***.  Rule 3-1(g) contemplates that Defendants

will produce all of the relevant source code "within 30 days of the initial P.R. 3-1 disclosures,"

which in this case would have been December 7, 2019.  However, Defendant Micro Focus

improperly delayed production of the majority of source code by over 8 months until August 18,

2020.  As a direct result of Defendants' improper 8-month delay in producing relevant source

code, the Second Updated Contentions were served in October.

In the absence of prejudice, and particularly in the absence of any prejudice caused by

Wapp, Defendants' Motion should be denied.  This is especially true in view of Wapp's

proffered Third Updated Contentions (discussed further below).

## IV.    THIRD UPDATED INFRINGEMENT CONTENTIONS

In order to resolve the parties' disputes and to address Defendants' complaints regarding

the Second Updated Contentions, Wapp will meet and confer and file a motion for leave to serve

its Third Updated Infringement Contentions.  Whereas Defendants complain that the Second

Updated Contentions contain 63 combinations of accused products and alleged placeholders for

products, Wapp's Third Updated Contentions reduce the number of accused products and

combinations to 8 thereby simplifying the case and resolving the Defendants' complaints as to

the Second Updated Contentions.  Specifically, in the Third Updated Contentions, Wapp narrows

the accused products to only the following for Bank of America:

> 1.  LoadRunner Cloud (formerly StormRunner Load) versions 12.50 through 2020
>     SP2-SP3 with Network Virtualization (including when integrated with Application
>     Lifecycle Management/Quality Center ("ALM/QC") versions 12.50 through

15.0.1) alone and/or in combination with UFT Mobile/Mobile Center through version 3.4 (the "LoadRunner Cloud Accused Systems").[3]

2.  LoadRunner Enterprise (formerly Performance Center) versions 12.50 through 2020 SP2-SP3 with Network Virtualization (including when integrated with Application Lifecycle Management/Quality Center ("ALM/QC") versions 12.50 through 15.0.1) alone and/or in combination with UFT Mobile/Mobile Center through version 3.4 (the "LoadRunner Enterprise Accused Systems").

3.  LoadRunner Professional (formerly LoadRunner) versions 12.50 through 2020 SP2-SP3 with Network Virtualization (including when integrated with Application Lifecycle Management/Quality Center ("ALM/QC") versions 12.50 through 15.0.1) alone and/or in combination with UFT Mobile/Mobile Center through version 3.4 (the "LoadRunner Professional Accused Systems").

4.  Unified Functional Testing ("UFT") (also called UFT One) versions 12.02 through 15.01 with Network Virtualization (including when integrated with Application Lifecycle Management/Quality Center ("ALM/QC") versions 12.50 through 15.0.1) alone and/or in combination with UFT Mobile/Mobile Center through version 3.4 (the "UFT Accused Systems").

Further, whereas Defendants' complain that the claim charts in the Second Updated Contentions are not specific as to each combination, the Third Updated Contentions include one chart per Defendant per patent for each of the four grounds listed above.

Therefore, for the reasons set forth above and in Wapp's Motion For Leave to Amend Infringement Contentions (which will be filed after a meet and confer), the Court should grant Wapp leave to serve its Third Updated Infringement Contentions.

## V.    CONCLUSION

For the foregoing reasons, Wapp respectfully requests that the Court deny the Motion to Strike and grant Wapp's Motion For Leave to Amend Infringement Contentions.

Dated: November 6, 2020                    */s/Robert Kramer*
                                            Robert Kramer

---

[3] Network virtualization is incorporated in the same package as LoadRunner Professional, LoadRunner Enterprise, and LoadRunner Cloud.

TX Bar No. 18341600
**Siebman, Forrest, Burg & Smith LLP**
Federal Courthouse Square
300 North Travis St.
Sherman, TX 75090
908/870-0070 Fax: 903/870-0066

Deron R. Dacus
TX Bar No. 00790553
ddacus@dacusfirm.com
**THE DACUS FIRM, PC**
821 ESE LOOP 323, Suite 430
Tyler, TX 75701
902/705-1117 Fax: 903/581-2543

Robert F. Kramer
CA Bar No. 181706 (Admitted E.D. Texas)
rkramer@feinday.com
M. Elizabeth Day
CA Bar No. 177125 (Admitted E.D.Texas)
eday@feinday.com
David Alberti
CA Bar No. 220625 (*pro hac vice pending*)
dalberti@feinday.com
Sal Lim
CA Bar No. 211836 (*pro hac vice pending*)
slim@feinday.com
Russell S. Tonkovich
CA Bar No. 233280 (Admitted E.D. Texas)
rtonkovich@feinday.com
Marc C. Belloli
CA Bar No. 244290 (*pro hac vice pending*)
mbelloli@feinday.com
Sven Raz
CA Bar No. 222262 (*pro hac vice pending*)
sraz@feinday.com
Andrew Hamill (Admitted E.D. Texas)
CA Bar No. 251156
ahamill@feinday.com
FEINBERG DAY KRAMER ALBERTI
LIM TONKOVICH & BELLOLI LLP
577 Airport Boulevard, Suite 250
Burlingame, California 94101
Telephone: (650) 514-2747
Facsimile: (650) 618-4368

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that the foregoing document is being served via the Court's CM/ECF system on

November 6, 2020 on all counsel of record who have consented to electronic service.

/s/ Robert Kramer
Robert Kramer

## CERTIFICATE OF FILING UNDER SEAL

Pursuant to Paragraph (5) of the Protective Order, Plaintiffs certify that certain

information contained in Exhibits 1, 5, 6 and 8 of the Declaration of Robert F. Kramer filed

herewith are Confidential under the Protective Order.  Plaintiffs are therefore filing Exhibits 1, 5,

6 and 8 under seal.

/s/ Robert Kramer
Robert Kramer